## Case No. 9,915.

### MULLER v. ERICH.

[See Case No. 9,916.]

## Case No. 9,916.

### MULLER v. HENRY et al.

[5 Sawy. 464; 7 Reporter. 772.] [1]

Circuit Court, D. California. May 1, 1879.

INJUNCTION—CONTEMPT—ACTING UNDER AUTHORITY OF ORDINANCE.

1. Certain parties having been injoined from grading a street until the hearing of the cause, or the further order of the court, subsequently proceeded to grade the street under authority of a city ordinance, passed after the issuing of the injunction, without first presenting the ordinance to the court and procuring a dissolution or modification of the injunction: *Held*, that they were guilty of contempt.

2. A party can only be relieved from the operation of an injunction, absolutely prohibiting the performance of a specific act, by the court granting the injunction.

The bill, supported by numerous affidavits, alleged that the defendants [Joseph Henry and others], without lawful authority, were depositing earth upon certain streets in Napa City and filling them up in such a manner as to dam up water which comes from high ground beyond, upon complainant's lot, occupied as a residence, which water will, by such retention on the lot, create a nuisance, producing irreparable injury by destroying the flowers, shrubbery, and a large number of ornamental trees which have been some twenty years growing upon the lot, and by becoming stagnant and unhealthy, render the lot uninhabitable. The defendants answered denying the effect attributed to the work, and alleging that they were lawfully grading the streets in question in pursuance of an ordinance of the city of Napa. Upon the hearing of an application for a temporary injunction upon the bill, answer, affidavits and charter of the city, the court held that the proceedings of the board of trustees under which the defendants were doing the work were void,

by reason of not having been taken in accordance with the requirements of the city charter, and that defendants were unlawfully filling the streets; and being of the opinion, from the facts disclosed by the pleadings and affidavits, that a private nuisance was likely to result from the work, injoined the defendants from "depositing any rock, earth, clay, gravel or other material" on said streets until the hearing, or till the further order of the court. After the issuing of the injunction the board of trustees passed another ordinance authorizing the doing of the same work, which for the purposes of the decision is assumed to have been done in pursuance of the provisions of the charter. Under the authority of these proceedings, without bringing them to the attention of the court, and while the injunction was still in force, the defendants again commenced to fill in the streets as they were doing before they were stopped by the injunction. Upon this proceeding instituted by the complainant [Hermon Muller] to punish them for contempt in violating the injunction, the defendants set up the said subsequent proceedings of the board of trustees as a justification.

B. S. Brooks, for complainant.
T. I. Bergin and Geo. W. Towle, for defendant.

SAWYER, Circuit Judge. After a full examination of the question submitted in this case, in the matter of contempt, and of the authorities bearing on the subject, I am confirmed in the impression, which I had at the hearing, that the parties are in contempt. The order of this court forbids the defendant doing certain specific acts, and those very acts they have performed.

The first question presented upon the application for the injunction, was, as to the validity of the ordinance authorizing the grading of the streets mentioned. The court held that ordinance to be invalid in consequence of a failure on the part of the board of trustees in passing it to pursue the methods prescribed by the statute. Then, there was another question, as to whether or not the work ordered by that ordinance to be done would create a private nuisance. The court was of opinion, from the evidence adduced, that the case was one in which an injunction should be issued until that question could be determined. After the injunction issued, the board of trustees of the city of Napa took proceedings (which, for the purposes of the decision, may be assumed to have been regular) to authorize the grading of the street—the thing which the defendants were prohibited from doing by the injunction of this court; and, under authority of that action on the part of the board of trustees, without moving this court to modify the injunction, or to release them from the restraints which it imposed, the parties proceeded with the work.

---

[1] [Reported by L. S. B. Sawyer. Esq., and here reprinted by permission. 7 Reporter, 772, contains only a partial report.]

In Williamson v. Carnan, 1 Gill & J. 184, I find a case which I think is directly in point, and which fully sustains the impression which I had at the hearing, and which has been deepened and confirmed by subsequent investigation. In that case, the levy court, as it was called, had authorized, by proceedings had for the purpose, the closing of a public road which ran over the lands of the defendant in the injunction suit. The defendant was about to close the road, and an injunction was obtained from the Baltimore county court, sitting in equity, restraining him from so doing. A writ of certiorari had been issued, and a review of the proceedings of the levy court had in the meantime. It turned out that the proceedings of the levy court were invalid for want of formality, and, in consequence of that informality, the proceedings of that court were reversed. The parties interested then again applied to the proper court by petition, in the regular course, and obtained another order for the closing of the road, all the parties interested having notice of this application, and appearing to contest it. In pursuance of this authority, supposing that it would protect him from the operation of the injunction, the party injoined again proceeded to close the road. This, substantially, is an outline of that case. It is rather long, and I shall only cite sufficient of it to show that it is a parallel case with the one now before me. The chancellor says (page 194): "At the March term, 1828, the complainants again by their petition stated, that the defendant, disregarding the said injunction, did by his agents, servants and himself, cause the road mentioned in the injunction to be obstructed on or about the thirteenth of December last, by causing a fence, etc., to be erected, and placing other obstructions on and across the same, etc., as will appear by the affidavits filed at the last term. That although an attachment issued, and was duly served on the defendant, it had not had the effect of causing him to remove the obstructions then existing; but, as would appear by the annexed affidavit, he had additionally obstructed the said road, etc. Prayer for an attachment against defendant, and that he be compelled to place the said road in the same situation as it was previously to his closing the same on or about the thirteenth of December last. An attachment was again ordered and issued, returnable forthwith; and was duly served, etc. The defendant appeared and filed his petition, in which he stated, that the proceedings of the levy court, in reference to the said road having been set aside by the Baltimore county court, upon the hearing and examination thereof, under the writ of certiorari, which had been issued, etc., as will appear by a transcript of the proceedings exhibited, not upon the merits of the case, but for defect of form"—which is the ground upon which these very proceedings are held to be invalid—"as will appear by a copy of the opinion of said court. That the petitioner being advised that that part of the said road called the 'Garrison Forest Road,' mentioned in the proceedings, having become a public road and highway, he, together with other petitioners, taxable inhabitants of the county, made a new application to the levy court, to alter and close the said part of said road; and that the complainants had notice thereof, and attended a meeting of the commissioners appointed under the said application, and opposed the confirmation of the return made by the said commissioners. That on the thirteenth of December, 1827, an order was passed by the commissioners of the county, to whom the powers and duties, heretofore exercised by the levy court, have been transferred, that all that part of the before-mentioned road be shut up and closed; and that the petitioner, or any other person or persons, through whose lands the said old road may have been departed from, by such altering, etc., are authorized to shut up and close the same, as by reference to a copy of the said proceedings exhibited will appear. That the complainants had knowledge of said order of the said commissioners, and that the said order being final and conclusive, without appeal, and no writ of certiorari having been applied for, and the said road so authorized to be closed passing transversely through the farm of the petitioner; and the complainants, by the altering of the said road, having another, and a better and shorter road, and the petitioner being greatly aggrieved by the passing of the said road through his lands, and conceiving himself fully authorized to do so by the said order, he, by virtue of the said order, and not, as he avers, in contempt of the court, did proceed to close the said road; and that he shut up and closed the same without force, etc., and before any attachment had issued against him. That since he has closed the said road he hath removed his inner fences, and planted an orchard on either side of and through the bed of the said road; and that the removal of his fences will be attended with great and irreparable damage to him. Prayer that the said road may be suffered to remain closed, and that he may be released from custody, and that the attachment may be quashed."

There is a long opinion upon the case, of which I shall quote small portions. After stating the circumstances of the case, the chancellor says: "It appears, then, by the defendant's petitions of the third of January and twenty-second of April, that he had conceived himself fully and legally authorized to close this highway, by virtue of the order of the levy court, notwithstanding the injunction of this court, which had positively prohibited him from closing or obstructing it in any way whatever; or, in other words, that the final order he had obtained had virtually, yet effectually and completely, dissolved and annulled the injunction heretofore granted by this court. The defendant made

no application or motion to have the injunction dissolved after the second of December, 1826, until the twenty-second of April last. He has not even deigned to speak of the injunction, in the body of either of those petitions, in which he acknowledges and attempts to justify the closing of the road; and yet, in the first, he asks to be permitted to file an amended answer, and to have the bill dismissed; and in the second, he prays that the road may remain closed, and that he may be discharged from the attachment. If the prayer of his first petition had been literally and fully granted, and the bill dismissed, yet that would not have dissolved the injunction, unless it had been so expressly ordered. By the second petition, this court is, in effect, gravely asked to make a most extraordinary transit over all its own proceedings, into those of the levy court; to approve, and act upon them, and totally disregard its own. For, an order of this court, as prayed, that the road should be suffered to remain closed, and that the defendant should be discharged from the attachment, most manifestly, could stand upon no other foundation than a complete affirmance of the proceedings of the levy court, and an entire disregard of all the previous proceedings of this court. I never before heard of such an indirect mode of obtaining a virtual dissolution of an injunction, by bringing to bear upon it a judicial decision of another and totally different tribunal, not exercising or having any appellate jurisdiction over the court whence the injunction issued. An injunction, emanating from a competent authority, is a command of the law; and the citizen is, as I have always understood, bound to yield implicit obedience, until the restriction has been removed by the authority which imposed it."

So, in this case, these parties were injoined from doing a specific thing—from grading this street and filling it up—and they go and get authority from another tribunal, the board of trustees of the city of Napa, to go to work and fill it up, which, if permitted, will virtually work a dissolution of the injunction of this court by the said board.

The court, in the case cited, proceeds to say: "But, if the position assumed by this defendant be correct, then, instead of obeying or moving to dissolve an injunction, a party may avail himself of various modes of getting around, or under, or over it, without being chargeable with the slightest contempt of the law. The judgment of this court, continuing the injunction, was founded upon the proof or admission of certain facts, after hearing both parties, as to the very point whether it ought to be continued or not. But, if it could be indirectly and virtually dissolved by a judgment of the levy court, upon a different case, then it might be evaded by one party without hearing the opposite party as to the former, or any new facts or equity, which he might be able to show, as a most solid ground for its further continuance. The court,

commanding obedience to an injunction, might thus be brought into collision with another court, alleged to have sanctioned, or as this defendant has said, ratified the acts in disobedience of it, in which conflict of jurisdiction, the rights of persons and of property, it is evident, must suffer, while he who produced the scuffle might escape with the spoils. Surely, such principles, which, to say the least of them, lead so directly to disorder and confusion, ought not to be tolerated for a moment."

So, in this case, if these parties are to go to another tribunal and get an order which may be legal in itself, and thereby are enabled to "escape with the spoils," and are to experience no trouble from this injunction, certainly disorder and confusion must result from such a state of affairs. "There is absolutely nothing in the prayer of the bill, nor in the writ of injunction itself, which limits the prohibition to a shutting up under the order of the levy court, or under any other particular and specified authority whatever." So, in this case, there is nothing in the injunction that refers at all to the particular action of the board of trustees; it is simply an injunction preventing them from grading that street—"from depositing any rock, earth, clay, ground or other material on" said streets, is the language of the writ—no reference whatever being made to the order of the board. It is not limited to that; it is not an injunction restraining these parties from doing this work under that order, but an injunction positively and absolutely forbidding their proceeding with it at all.

The court proceeds: "Neither the terms of the prayer, nor of the writ, make any allusion whatever to any judicial proceedings of any kind then pending, or thereafter to be instituted. The restriction imposed upon the defendant is as general and comprehensive as it could well be expressed, the clear and unequivocal sense of which is, that the road shall continue to be considered as a public road or highway, which the defendant shall not be permitted to close until he shall produce and show to this court that he had obtained a legal authority to do so. Therefore, the only question now is, whether the acts done by this defendant are such as he was prohibited from doing by the injunction? These acts are the erection of obstructions upon this highway; now these are the very acts which this injunction does most positively and distinctly prohibit."

And so in this case, the injunction was to prohibit these parties from filling up the streets; that is what is stated in distinct terms.

The court continues: "It is true, that if the injunction had prohibited acts of one description from being done, and the party restrained had done acts of another description, he could not, as the defendant has alleged, be charged with a contempt. The injunction did not prohibit him or any other person from in-

stituting any proceedings, or making any application for the purpose of obtaining a legal authority to close the road." So, in this case, the injunction did not prohibit the board of trustees from passing the proper order for the grading of this street. But they did not stop at that. The order having been passed, instead of coming to this court and presenting that order, and showing the fact that they were now in a position to proceed legally and regularly, and obtaining the order of this court allowing them to proceed, the defendants assumed the authority to go further, and, without the authority of the court, to do the very thing which this court enjoined them from doing.

The chancellor then proceeds to say: "Most unquestionably, this defendant cannot be allowed to do so, upon his obtaining an authority to close it, until he has first shown that authority to this court, and upon motion and notice to the opposite party, according to the established practice, obtained a dissolution of that general and unqualified restraint which has been imposed upon him by the injunction. This first cause shown by the defendant for his discharge, being based upon an assumed position not warranted by the proceedings, is therefore deemed insufficient. Indeed, the showing itself seems tacitly to admit the correctness of the charge of contempt, but for that qualification of the injunction which it has assumed, and which has, in fact, no real existence."

Now, that is precisely the position of this case. The parties were grading, or about to grade, this street, assuming to act under the authority of the city board of trustees. By injunction issued from this court they were restrained from carrying on the work—from doing a specific thing. They then went and got another order from the same authority under which they were first acting, as was done in the case from which I have just read; and then, without coming to this court and asking to be relieved from the injunction, on the ground that they now have proper authority, and are proceeding regularly, they undertook to go on and do the specific thing prohibited, and therefore dissolve the injunction granted by this court, by virtue of proceedings of the board of trustees of the city of Napa.

The injunction should be obeyed until it is dissolved by the authority which granted it. Undoubtedly, if a proper showing were made, if the court were satisfied that the injunction should be dissolved, it would be dissolved; but until that is done, the party himself has no right to determine the fact that he has authority to proceed, in violation of the injunction of this court, to perform the acts which have been prohibited.

For the purposes of this motion, it is assumed that the later proceedings of the board of trustees are regular in form—that the ordinance upon its face is valid. From an examination of the ordinance, and of the papers submitted, I understand that no provision has been made for draining off the water when this grade shall be carried out, and thus obviating what is claimed will be a nuisance. If such is the case, although the proceedings of the board may be regular in form, and an ordinance passed strictly in accordance with the provisions of the statutes, there still might result a private nuisance which the authorities of the city of Napa would not be permitted to create. That is one of the questions which is still left for the determination of the court, and the only question left for consideration in the case upon which the injunction issued. If it had been made to appear to the court, after the passage of this recent ordinance, that the grading of the street, without providing for drainage, would not create a private nuisance, the injunction would have been at once dissolved. The court granted the injunction, because it appeared that a private nuisance was likely to be created, and because it appeared that the work was not being done under proper authority; but it does not follow, that even the board of trustees of the city of Napa could take proceedings, even though regular in form, and passed in accordance with the modes provided by the statute, to create a private nuisance. In the case of Spokes v. Banbury Board of Health, L. R. 1 Eq. Cas. 49, the board of health, proceeding strictly in accordance with the terms of the law, proceeded to, and did, cut into a stream which ran through the land of a party below, drains which were necessary to the health of the town, to carry off water and filth, thereby rendering the said party's place uninhabitable. The injured party applied for an injunction, and the court held, in very decided terms, that even though the cutting of the drains were necessary to the health of the town, the authorities could not create such a nuisance, to the destruction of private property.

I only call attention to that case, at this time, in order to show that there are authorities holding that a private nuisance cannot be committed even by municipal authority, as that is one question still undetermined in this case, assuming the proceedings of the board of trustees to be regular in all other particulars. I leave this point open, however, till the hearing. The defendants must, therefore, be adjudged to be in contempt.

They, however, deny any intention of committing any contempt of this court, and assert that they resumed and proceeded with the work under advice of counsel that this later action of the board of trustees was sufficient authority to justify them in proceeding. I do not suppose that the contempt was willful, and I do not propose to be vindictive in inflicting a penalty. The question of punishment for the contempt was not particularly discussed on the hearing, and I do not know what the actual damage to the complainant has been, as there is no special evidence upon that point, and I am, therefore, not prepared

at present to announce the penalty which should be inflicted. In order to enable counsel to prepare and produce evidence as to the amount of damage resulting from the performance of this work, which has been done since the issuing of the injunction. I will continue the matter until Monday, the twelfth instant, at 11 o'clock in the forenoon.