BOWERS v. VON SCHMIDT.

(Circuit Court, N. D. California. April 21, 1898.)

No. 10,244.

VIOLATION OF INJUNCTION—CONTEMPT—PATENT INFRINGEMENT SUIT.

One selling a machine contrary to the terms of an injunction in a patent infringement suit is guilty of a technical contempt, though he in good faith supposes himself authorized to make the sale under an arrangement made subsequent to the decree, and to which complainant is a party. Before making the sale, it is his duty to bring such arrangement to the notice of the court, and procure a modification of the injunction; but the arrangement, and the defendant's good faith, will be considered in mitigation of the punishment.

This was a proceeding brought in the above-entitled case against A. W. Von Schmidt to punish him for an alleged contempt in violating an injunction.

John H. Miller, for complainant.

Wheaton & Kalloch, for respondent.

MORROW, Circuit Judge (orally). The interlocutory decree of this court, dated July 23, 1894, ordered, adjudged, and decreed:

"That the said Allexey W. Von Schmidt, his agents, servants, workmen, attorneys, and employés, be, and they are hereby, perpetually enjoined and restrained from making, using, or selling any dredging machine, appliance, or apparatus containing the inventions claimed, covered, and patented in and by claims 10, 16, 25, 53, 54, and 59, or any or either of them, of patent No. 318,859, dated May 26, 1885, and also from making, using, or selling any dredging machine, apparatus, or appliance containing the inventions claimed, covered, and protected by claims 13, 17, and 18, or any or either of them, of letters patent No. 355,251, dated December 28, 1886." 63 Fed. 572, affirmed by 25 C. C. A. 323, 80 Fed. 121.

In an affidavit filed by Mr. Bowers, it is alleged:

That the respondent, A. W. Von Schmidt, had full knowledge of this decree, and of the terms thereof, and "that the dredging machine involved in this case, and claimed to be an infringement, was a certain machine known as the 'Von Schmidt Dredger,' sometimes called the 'Oakland,' and at the time of the settlement with the McNee Bros., hereinafter mentioned, said

defendant owned a one-half interest in said machine, and the McNee Bros. owned the other half; that after the entry of said decree the said McNee Bros. settled with affiant for the infringement of which they had been guilty by the use in conjunction with A. W. Von Schmidt of the dredger Oakland, and by the use of similar machines in the Eastern states, and outside of California; that in and by the settlement, and as a part thereof, and in addition to the money and other property paid by the McNees to affiant for said infringement, they transferred and conveyed to affiant their one-half interest in the said dredger Oakland, and thereafter this affiant owned a one-half interest therein, and the defendant, Von Schmidt, owned the other half interest; that a few days ago affiant was informed by John McMullen, who is president of the San Francisco Bridge Company, a corporation engaged in the dredging business, that the said Von Schmidt has sold to the San Francisco Bridge Company his (the said Von Schmidt's) one-half interest in said dredger Oakland, and that the San Francisco Bridge Company has purchased of and from the said Von Schmidt the said one-half interest in said dredger Oakland, and has paid to the said Von Schmidt a large sum of money, to wit, about thirteen thousand dollars, of which sum they have paid the said Von Schmidt, for his own use, ten thousand dollars, and have paid the remainder to various persons in liquidation of claims against said dredger Oakland; that affiant was very much astonished at the information, inasmuch as the decree in this case enjoined and prohibited the said Von Schmidt from selling the said dredging machine, or his interest therein; that affiant never gave the said Von Schmidt permission to sell the said machine, or his interest therein, and the said Von Schmidt sold his said interest in said machine without the knowledge or consent of affiant; that the said dredger Oakland contains and embodies the inventions claimed, covered, and patented in and by the several claims of the two patents hereinabove referred to."

In reply to the order to show cause, and the affidavit of Bowers, Von Schmidt filed this affidavit:

"A. W. Von Schmidt, being duly sworn, deposes and says that he is the respondent in the above-entitled cause; that he has read the affidavits of A. B. Bowers and J. H. Miller in this proceeding. Affiant admits that on or about the 8th day of September, 1897, he did sell to the San Francisco Bridge Company an undivided one-half interest in and to the Von Schmidt dredge."

Mr. Von Schmidt then proceeds to relate the circumstances of the transaction which is charged as a violation of the injunction, showing that there had been negotiations concerning the use of the dredge Oakland by the San Francisco Bridge Company, and that, as the result of those negotiations, he deemed himself permitted to sell his interest in this dredge to the bridge company. But all of the matter contained in this affidavit, after the statement that he admits having sold his interest in the dredge, is, in my judgment, irrelevant and immaterial in determining whether or not Von Schmidt has violated the order of this court. The order of this court was that he should not make, use, or sell any dredging machine, apparatus, or appliance containing the invention claimed. He did sell his half interest in that dredge. That constituted a violation of the order; and all matters that are set up in the affidavits, and in this affidavit in particular, showing the circumstances of the transaction, and that they were negotiations in which Mr. Bowers was involved as a part owner of the dredge,—in my judgment,—only go in mitigation of the punishment which should be inflicted by the court in this case. When the matter was presented to the court upon argument, it occurred to me that Mr. Bowers had, by his transactions with the bridge company, in giving them permission to use his half interest in

that dredge, and by agreeing with the bridge company that they might procure the use of the other half of the dredge owned by Von Schmidt, gone so far that there was no contempt of court on the part of Von Schmidt in the sale of his half of the dredge.    But, upon further examination of the question, I am convinced that Von Schmidt cannot be excused by the matter set up in his defense, and that all these transactions with which Bowers was connected, and that between Von Schmidt and the bridge company, to which it is alleged Bowers consented, can only be considered, as I said before, in mitigation of the punishment to be inflicted upon the respondent.    If, under the circumstances, Von Schmidt should have been allowed to dispose of his half of the dredge, then the order of the court should have been so modified.    I find that I am justified in this view of the law by the rule that was adopted in the case of Williamson v. Carnan, 1 Gill & J. 184, and followed in this court in the case of Muller v. Henry, 5 Sawy. 464, Fed. Cas. No. 9,916.    In the first-named case, the levy court of Baltimore had authority, by proceedings for that purpose, to close a public road which ran through the lands of the defendant in the injunction suit.    The defendant was about to close the road, and an injunction was obtained from the Baltimore county court, sitting in equity, restraining him from so doing.    A writ of certiorari had in the meantime been issued by the Baltimore county court, and the proceedings of the levy court reviewed.    The action of the levy court in respect to the road was determined to be invalid, for the want of some formality.    The parties thereupon applied to the proper tribunal by petition in the regular course, and obtained another order for the closing of the road.    All the parties, including the complainants in the injunction suit, had notice of the application, and the latter attended, and opposed the granting of the order.    In pursuance of this authority, supposing that it would protect him from the operations of the injunction, the party enjoined again proceeded to close the road.    In a showing, upon attachment, why he should not be punished for contempt in thus disobeying the order of the court, the defendant alleged:

"That the said order [referring to the last order obtained for closing the road] being final and conclusive, without appeal, and no writ of certiorari having been applied for, and the said road so authorized to be closed passing transversely through the farm of the petitioner, and the complainants by the altering of the said road having another and a better and shorter road, and the petitioner being greatly aggrieved by the passing of the said road through his lands, and conceiving himself fully authorized to do so by the said order, he, by virtue of said order, and not, as he avers, in contempt of the court, did proceed to close the said road, and that he shut up or closed the same without force, and before any attachment had issued against him; that, since he had closed the road, he had removed his inner fences, and planted an orchard on either side of, and through the bed of, the said road; and that the removal of his fences will be attended with great and irreparable damage to him."

In commenting upon this explanation of defendant's conduct, the chancellor says:

"It appears, then, by the defendant's petitions of the 3d of January and 22d of April, that he had conceived himself fully and legally authorized to close this highway, by virtue of the order of the levy court, notwithstanding the injunction of this court, which had positively prohibited him from closing or

obstructing it in any way whatever; or, in other words, that the final order he had obtained had virtually, yet effectually and completely, dissolved and annulled the injunction heretofore granted by this court. * * * By the second petition, this court is, in effect, gravely asked to make a most extraordinary transit over all its own proceedings, into those of the levy court; to approve and act upon them, and totally disregard its own. For an order of this court, as prayed, that the road should be suffered to remain closed, and that the defendant should be discharged from the attachment, most manifestly could stand upon no other foundation than a complete affirmance of the proceedings of the levy court, and an entire disregard of all the previous proceedings of this court. I never before heard of such an indirect mode of obtaining a virtual dissolution of an injunction, by bringing to bear upon it a judicial decision of another and totally different tribunal, not exercising or having any appellate jurisdiction over the court whence the injunction issued. An injunction emanating from a competent authority is a command of the law; and the citizen is, as I have always understood, bound to yield implicit obedience until the restriction has been removed by the authority which imposed it. But, if the position assumed by this defendant be correct, then, instead of obeying or moving to dissolve an injunction, a party may avail himself of various modes of getting around or under or over it, without being chargeable with the slightest contempt of the law. The judgment of this court, continuing the injunction, was founded upon the proof or admission of certain facts, after hearing both parties, as to the very point whether it ought to be continued or not. But, if it could be indirectly and virtually dissolved by a judgment of the levy court, upon a different case, then it might be evaded by one party without hearing the opposite party as to the former or any new facts or equity which he might be able to show as a most solid ground for its further continuance. The court commanding obedience to an injunction might thus be brought into collision with another court alleged to have sanctioned, or, as this defendant has said, ratified, the acts in disobedience of it, in which conflict of jurisdiction the rights of persons and of property, it is evident, must suffer, while he who produced the scuffle might escape with the spoil. Surely, such principles, which, to say the least of them, lead so directly to disorder and confusion, ought not to be tolerated for a moment."

In Muller v. Henry, 5 Sawy. 464, Fed. Cas. No. 9,916, the late Judge Sawyer followed the rule established in the case just cited, where the subject of controversy related to the filling up of streets in Napa City, in this state, in such a manner as to dam up water coming from high ground beyond, upon complainant's lot, creating a nuisance. Upon the hearing of the application for a temporary injunction upon the bill, answer, and affidavits, the court held that the proceedings of the board of trustees under which the defendants were doing the work were void, by reason of not having been taken in accordance with the city charter. After the issuing of the injunction, the board of trustees passed another ordinance, authorizing the doing of the same work, which for the purpose of the decision of the court, was assumed to be in accordance with the requirements of the charter. Under the authority of these proceedings, without bringing them to the attention of the court, and while the injunction was still in force, the defendants again commenced to fill in the streets as they were doing before they were stopped by the injunction. Upon the proceeding instituted by the complainant to punish the defendants for contempt in violating the injunction, they set up the said subsequent proceedings of the board of trustees as a justification. The court held that they were guilty of contempt, and that a party can only be relieved from the operation of an injunction abso-

lutely prohibiting the performance of a specific act by the court granting the injunction. Apply this rule to the present case, we have here no order of another court having jurisdiction, we will say, over the sale of the property, but what is claimed to be the implied consent of the patentee. This is clearly not sufficient, under the circumstances of this case. If Von Schmidt believed he had the consent of the patentee to make the sale, he should have come to this court, and obtained an order modifying the interlocutory decree in that particular. There is therefore nothing for this court to do but to adjudge that Von Schmidt is guilty of contempt of court. The only question remaining is as to the punishment.

Mr. Kalloch: Will counsel be heard upon the matter of mitigation of punishment?

The Court: I think I fully understand all of the facts, so far as that is concerned. I am about to read the matter that I think is pertinent upon that question.

Mr. Miller: If your honor please, I simply desire to say, on behalf of the complainant in the case, that we have no desire that Col. Von Schmidt shall be punished in any excessive amount. We are willing that the court should impose a minimum penalty.

The Court: I desire to read the matter which I deem to be in mitigation of the punishment to be inflicted upon Col. Von Schmidt.

It seems that Bowers entered into this contract with the bridge company:

"Memorandum of agreement between San Francisco Bridge Company, a corporation, party of the first part, and Bowers California Dredging Company, a corporation, party of the second part, both created under the laws of California, made this 21st day of July, 1897: Whereas, the party of the first part is engaged in the dredging business; and whereas, the party of the second part is the owner of the right to use in the state of California certain patents granted to A. B. Bowers, A. W. Von Schmidt, and others, and is also owner of a one-half (½) interest in a certain dredging machine, and its appurtenances, known as the 'Von Schmidt Dredger,' the 'Oakland'; and whereas, the United States government has appropriated the sum of $170,000 for dredging at Mare Island, California; and whereas, the party of the first part intends to bid for the contract for said dredging [this contract is by the Bowers California Dredging Company, but Bowers had transferred his interest to that company, and was president of the company]: Now, therefore, if said party of the first part secures said contract, either by public letting or private contract, or if the dredging machine of the party of the first part is used or employed on said work by itself, or by any other party, the party of the first part agrees to pay to the party of the second part the sum of seven per cent. on the total gross price the government pays for said work on said contract; said payment to be made monthly, within five days of the time the party of the first part receives its monthly estimates on account of said contract. In consideration of said agreement to pay the amount, and in the manner, above specified, and the further consideration to it in hand paid, the receipt of which is hereby acknowledged, the party of the second part hereby grants an exclusive license to the party of the first part to use the aforementioned patents, or any or all of them, on said dredging, and further agrees to give it the free use on said contract of its one-half interest in the certain Von Schmidt dredging machine hereinbefore mentioned, until the completion of said contract, provided the other half can be obtained from A. W. Von Schmidt; it being understood that the party of the first part, if it desires to use said Von Schmidt machine, must, at its own expense, arrange for the use of the other one-half interest of said dredger with A. W. Von Schmidt."

What did they do? The San Francisco Bridge Company, under this agreement, understanding that it had the right to obtain the use of the Von Schmidt dredge, purchased it, although they only had the right to use it. And these affidavits are to the effect that the Bowers Company only intended that they should have the right to use the Bowers half interest, and procure the use of the other half. But the bridge company show that they thought they had permission, under this agreement, to obtain the Von Schmidt interest the best way they could; if they could not rent it, they might buy it. That agreement did give to the bridge company the apparent consent to acquire the Von Schmidt machine, and Von Schmidt undoubtedly considered that he was entitled to sell it to the company. And he says so in his affidavit. He says he supposed he had a right to sell it to them under that permission of Bowers, and therefore they did not come into court and get the permission of the court upon that proposition, or to secure a modification or dissolution of the injunction. But, under the rule I have stated, the defendant is guilty of a technical violation of the order of court. The judgment of the court is that the respondent pay a fine of $50; and, if he does not pay the fine within 10 days, he will be imprisoned until the fine is paid, not to exceed 30 days.