### In re SYLVESTER et al.

District Court, S. D. New York.
Jan. 10, 1930.

232

Kopp, Markewich & Null, of New York City (Harry Kopp, of New York City, of counsel), for petitioner Superfine Corporation.

Slade & Slade, of New York City (Maxwell Slade, of New York City, of counsel), for petitioner Federal Mail Order Corporation.

Charles H. Tuttle, U. S. Atty., of New York City, for respondents.

WOOLSEY, J.

This petition is denied in respect of both the forms of relief sought, except that a technical contempt on the part of both Mr. Sylvester and Mr. Lynch is found, and they are both hereby reprimanded.

The facts on which this unusual application is based are as follows:

On September 6, 1929, Paul Rabkin and Sol Rubman were arraigned before a United States commissioner charged with conspiring to smuggle merchandise into the United States without payment of duty. They were held for the grand jury, and bail was fixed at $5,000 for each of them. On giving bail they were both released. Before the commissioner, on both occasions, both Rabkin and Rubman were represented by Messrs. Wise, Whitney & Parker.

On September 10, 1929, Mr. Lynch, one of the respondents, on the approval of Mr. Sylvester, the other respondent, swore out a search warrant under title 18, U. S. Code, § 88 (18 USCA § 88), U. S. Cr. Code § 37, for merchandise knowingly and willfully smuggled into the United States as part of a conspiracy to violate the Tariff Act of 1922, title 19, U. S. Code, § 496 (19 USCA § 496), and willfully to defraud the United States of duties. In the affidavit on application for the search warrant this merchandise was stated to be in premises at 561–563 Broadway, on the third floor thereof, which was leased by the Federal Mail Order Corporation and occupied by it and the Superfine Watch Company. The application also alleged that books, papers, and records used in the commission of the crime and necessary thereto were also in the same premises.

The search warrant which was granted, in pursuance of this affidavit, on September 10, 1929, authorized the search of the premises above mentioned and the seizure of the

property, books, papers, and records mentioned in the application, if found thereon.

The search warrant was executed and Mr. Lynch and some customs guards searched the premises and seized certain watches, watch movements, books, papers, and records there in found.

On September 19, 1929, a motion was made on behalf of the Superfine Watch Company and the Federal Mail Order Corporation—through the attorneys who are acting for the petitioner on the present application—to vacate and quash the search warrant on the ground that their constitutional rights were violated by the search and seizure had in pursuance thereof. This motion was argued before Judge Kennedy, of Wyoming, duly authorized to sit here as a visiting judge.

On September 30, 1929, the defendant Rabkin and Rubman were indicted by the grand jury of this district for conspiracy to defraud the United States of duties.

On October 1, 1929, Messrs. Battle, Miller, Levy & Van Tine were engaged by Sol Rubman to represent him in the criminal proceeding.

On Friday, October 4, 1929, Judge Kennedy handed down a decision setting the search warrant aside and providing that the merchandise seized together with the books and papers also seized should be returned to the petitioners.

On Saturday, October 5, 1929, Judge Kennedy, in pursuance of his decision, signed and entered an order which provided for the quashing of the search warrant, the return of the property and papers seized on service of a certified copy of his order, and a suppression of the evidence secured by the seizure.

It was also ordered that the United States should vacate the premises which it was occupying under the search warrant on October 7, 1929, at 12 o'clock noon, and that the merchandise, books, and papers should remain on the premises until that time.

The United States attorney decided to appeal from Judge Kennedy's order, and proceeded at once to prepare the necessary appeal papers.

On October 7, 1929, at about 10:30 a. m., Rabkin and Rubman were arraigned before Judge Coleman, and pleaded not guilty to the indictment above mentioned. On that occasion Rubkin was represented by Mr. Welles, of the firm of Wise, Whitney & Parker, and Rubman by Mr. Battle and Mr. Fowler of the firm of Battle, Miller, Levy & Van Tine.

A certified copy of Judge Kennedy's order was served on the United States Attorney and on Lynch, the customs agent, before the time when, under its provisions, it was to become effective.

The appeal papers which had been prepared by the United States attorney were ready by 11 o'clock a. m. on Monday, October 7th.

Between that time and noon Mr. Sylvester has stated in his affidavit herein that he had a conversation in his office with Mr. Fowler, representing Rubman, and Mr. Welles, representing Rabkin, in pursuance of which it was agreed, in order to avoid possible damage to the watches, that if the government would agree to leave the watches at 561 Broadway under customs guard, it might at its convenience obtain another search warrant to meet the requirements of Judge Kennedy's decision, seize the watches, and then bring forfeiture proceedings. Mr. Lynch. was also present at this conversation.

It is not clear to me that the real situation was understood by all the parties to this conference.

Mr. Fowler, who gave an affidavit to the respondents in this contempt proceeding, states his version of the conversation as follows:

"At the time all this took place I did not even know that a motion had been made by Mr. Harry Kopp, of the firm of Kopp, Markewich & Null, of 51 Chambers Street, New York City, to quash the search warrant and for the return of the merchandise seized on the premises of the defendants, nor was I acquainted with the terms of the order signed by Judge Kennedy granting Mr. Kopp's motion to vacate the search warrant and ordering the return of the property and the removal of the guards not later than Monday at twelve o'clock. All of this I learned at a later time and when I said to Mr. Welles in Mr. Sylvester's presence that I thought the guards should remain on the premises I was expressing an opinion based entirely upon what Mr. Welles had said to the effect that the watches were of such delicate mechanism that they would be damaged if removed.

"With the exception of my conversation. with Mr. Lynch, and with the exception of my conversation with Mr. Sylvester in regard to an entirely different matter, i. e. the return of personal papers, almost all of the negotiations and conversation took place between Mr. Sylvester and Mr. Welles."

Mr. Welles, although also requested to give an affidavit as to the conference above

mentioned, has stated that he is obliged to refuse to do so owing to instructions from Mr. Rabkin who filed the petition herein. Mr. Whitney's lips are sealed for the same reason.

Relying—I think without legal warrant, for the reasons which I shall hereafter give—on this alleged understanding with the attorneys who represented Rabkin and Rubman on the indictment, Mr. Sylvester let the hour of noon on October 7, 1929, go by without complying with Judge Kennedy's order.

Indeed, before noon, without having the said order modified, through Mr. Lynch he instructed and notified the customs guards at the petitioners' premises at 561–3 Broadway that they could remain there.

The premises were therefore not vacated by the United States in accordance with Judge Kennedy's order.

At some time between 1 p. m. and 1:30 p. m. on October 7th, a representative of the office of Messrs. Slade & Slade, attorneys for the Federal Mail Order Corporation, inquired whether a stay had been signed by Judge Manton. Mr. Sylvester told them that no stay had been signed. Then—apparently scenting difficulties—which should have been foreseen by him from the time Judge Kennedy signed his order on October 5th, Mr. Sylvester states that he felt that, in view of the conflict between the two sets of attorneys, i. e., those representing Rabkin and Rubman in the criminal case, and those representing the Superfine Watch Company and the Federal Mail Order Corporation in the search warrant proceeding, it would be better for him to get the appeal allowed, for which, earlier in the day, he had prepared the papers.

About 2 p. m. on October 7th, therefore, Mr. Sylvester got Judge Coleman to allow an appeal, and, fearing that the appeal alone would not operate automatically as a stay, then proceeded with his appealed case to Judge Manton, who at about 2:30 p. m. made an order on the appeal papers staying the execution of Judge Kennedy's order.

In pursuance of Judge Manton's instructions, the attorneys in the search warrant proceedings were duly notified of the stay, and at once secured from Judge Manton an order to show cause why the stay should not be vacated. This order was returnable on Tuesday, October 8th, and on the argument of the motion about 3 p. m. on October 8th, Judge Manton vacated the stay. His formal order so doing was signed about 4:15 p. m. on that day.

Thereupon a new search warrant was at once sworn out by Mr. Lynch with Mr. Sylvester's approval. This warrant was executed, and the watches and watch movements in question were again seized, after a short though technically adequate compliance with Judge Kennedy's then unstayed order, by a temporary withdrawal of the customs guards from the premises.

The search warrant of October 8th was directed specifically and only to the watches and watch movements alleged to have been smuggled and illegally imported without payment of duty. The books, papers, and records seized under the search warrant of September 10th were not again seized, but were restored to and left in the possession of the petitioners.

Out of these unnecessarily involved proceedings the present application grew.

It is regrettable that the court's time should be consumed by a matter of such essential futility as the present petition. But I have been at some pains to go into the details of the facts involved, in order to point a warning.

I shall deal with the second branch of the motion first.

I. The question of the validity of the search warrant of October 8, 1929, is not properly before me.

The second prayer of the petition is: "That an order be made and entered that the merchandise in possession of the United States of America, its agents and servants, be forthwith returned."

It will have been seen from the statement of facts above given that the books, records, and papers of the petitioners seized under the warrant of September 10th have been returned to them. This prayer, apparently, does, and by necessary implication must, refer only to the watches, watch movements, etc., which were seized under the search warrant of October 8th.

No motion directed to the vacating of that warrant has been made herein. The question of the sufficiency of that warrant has not been argued in this proceeding.

Inasmuch as the merchandise, books, and papers were returned under Judge Kennedy's order of October 5th, vacating the warrant of September 10th, and the merchandise again has been seized, and is now in the

possession of the United States under the warrant of October 8th, there cannot be any question of returning such property raised before me on an application like this involving only the first warrant.

The petitioners as a result of Judge Kennedy's order have everything except the merchandise in their possession. As to that, they must look for their remedy to some proceeding in which the validity of the search warrant of October 8th is directly challenged.

II. The appeal from the order vacating the search warrant of September 10th is outstanding and has removed all proceedings under that warrant from this court.

As to the second branch of the motion, therefore, by which I am asked for an order directing the United States to return the merchandise seized under the search warrant of September 10th, it is to be observed that I am without power to do anything, because of the appeal which has been taken by the United States from Judge Kennedy's order.

Whether the order setting aside the warrant was properly appealable or not is immaterial to me in this proceeding, and cannot be determined by me. That question must be dealt with by the Circuit Court of Appeals. Spirou v. United States, 24 F.(2d) 796, 797 (C. C. A. 2); Ulmer v. United States, 266 F. 176, 178 (C. C. A. 2); United States v. Rudd, 30 F.(2d) 308, 309 (D. C. N. Y.).

III. The respondents Mr. Sylvester and Mr. Lynch were technically in contempt at least from 12 o'clock noon on October 7, 1929, until 2 o'clock p. m. when the appeal of the United States was allowed, and, possibly, until Judge Manton granted the stay of Judge Kennedy's order.

Although both these respondents were, to put it mildly, very neglectful of their duty to the court in their failure to comply at noon on October 7th with the provisions of Judge Kennedy's order, of which they had had two days' notice, I think that they acted in good faith relying on the alleged agreement with Messrs. Welles and Fowler.

Mr. Sylvester was the controlling factor in the situation, because Mr. Lynch acted on his advice and instructions; but what is said herein applies equally to Mr. Lynch.

Court orders must be precisely and promptly obeyed. A person who fails so to obey a court order is guilty of a technical contempt and is punishable therefor. An arrangement between the parties to a case, or their attorneys, to act at variance with a court order does not excuse them although, if they act in good faith, it may serve to palliate their punishment. Bowers v. Von Schmidt (C. C.) 87 F. 293, 295, 298; Muller v. Henry, 2 Sawy. 464, Fed. Cas. No. 9,916; Williamson v. Carnan, 1 Gill & J. (Md.) 184.

Consequently, an agreement such as Mr. Sylvester claims that he had with Mr. Fowler and Mr. Welles, and on which he relies in his claim of good faith, technically would not have excused him even if it had been with the attorneys in charge of the search warrant proceedings.

The search warrant proceedings were begun before the indictment, they were pointed toward the forfeiture of the smuggled goods, and, in my opinion, were independent of the criminal case, for, although they may be deemed to have become ancillary thereto after the indictment was found and a criminal case begun, they never became an integral part of it. A rough analogy which suggests itself is that of a bill of discovery in equity as an ancillary remedy to an action at law in this court.

For strategic reasons, it may be unwise for a party to select one firm of lawyers for its main proceeding, and another for an ancillary proceeding, but such a course does not furnish a proper basis for any criticism. It could only lead to difficulties when the opposing attorneys did not know in which proceeding the attorneys with whom they were dealing had been retained. Under such circumstances, it is conceivable that the "confusion of counsel" claimed by Mr. Sylvester here might be a valid plea in excuse for some mistake.

But here Mr. Sylvester knew that one group of lawyers, consisting of two firms, were representing the several defendants respectively in the main criminal case, and another group of lawyers, consisting of two other firms, were representing the searched corporations in the search warrant proceedings. There should not really have been any "confusion of counsel" in his mind. There were merely two sets of counsel in two separate proceedings, and Mr. Sylvester treated with the wrong group in his endeavor to make his arrangement for maintaining the status quo in spite of Judge Kennedy's order.

It is true that a party to an action and his attorney are entitled to look to the attorney of record of the opposing party in any proceeding as the person presumptively

clothed with authority to negotiate and stipulate with regard to any interlocutory matters which may come up for consideration during the course of the proceeding. But that is an ostensible authority only, which cannot be invoked when the attorney knows, as Mr. Sylvester knew here, that the attorneys with whom he was dealing were not in charge of the proceeding in which the agreement, which he desired, was sought.

Judge Kennedy started for the West on Sunday, October 6th, and so was not available on October 7th on any application for a further stay or for a reargument.

I think Mr. Sylvester's proper course on October 7th would have been one of three:

1. To have applied to Judge Coleman, when he was in court on the morning of October 7th, for a further stay of the operation of Judge Kennedy's order, or

2. To have taken his appeal therefrom before noon on that day, or

3. To have sworn out a new warrant and executed it at noon on that day, so soon as Judge Kennedy's order became effective.

One, who has been at the bar so recently as I have, realizes that mistakes in practice are often begotten of emergencies and pressure of work, and I am satisfied that, if Mr. Sylvester had taken more time to think the matter out, he would not have followed the practice which he did follow in connection with Judge Kennedy's order. I think he was somewhat careless—perhaps, after his supposed agreement with Mr. Welles and Mr. Fowler. a little reckless—in his attitude toward that order.

The two branches of this motion are, apparently, quite independent.

As the application to punish Mr. Sylvester and Mr. Lynch is obviously vindictive, and is not integrated with any remedial relief possible under the situation above outlined, I think it may be fairly treated as sounding in criminal contempt. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 441, 443, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

Proceeding on that basis, I find:

1. That a technical contempt is proved beyond a reasonable doubt, and

2. That in Mr. Sylvester's case it was accomplished by the mistaken but honest belief that he had arranged matters for an extension of time by his conference with Mr. Fowler and Mr. Welles on the morning of October 7th, and

3. That, as Mr. Lynch was merely acting on Mr. Sylvester's instructions and advice, he is entitled to avail himself in mitigation of punishment of the same excuses as Mr. Sylvester.

4. That neither of them intended eventually to defy the court's authority, and actually disobeyed the order for a few hours only, and

5. Consequently that their contempt was merely technical.

In a civil contempt punishment is not discretionary because the object is remedial, and the party invoking the court's aid on the contempt has the right to its remedy. E. Ingraham Co. v. Germanow, 4 F.(2d) 1002 (C. C. A. 2).

A criminal contempt, however, which is merely technical as here, need not be followed by punishment, if the court is satisfied that its authority was not intended to be flouted willfully and in bad faith.

I am satisfied of that here, and, I think, consequently that all necessary purposes of this proceeding will be served if I reprimand Mr. Sylvester and Mr. Lynch for not having specifically obeyed Judge Kennedy's order so long as it remained unmodified, and had not been stayed. That I hereby do.

Furthermore, I remind Mr. Sylvester, and through him, Mr. Lynch, that, as Judge Hough once pointed out, the United States attorney and his aides are not privileged characters, but are subject to precisely the same rules and penalties, and to the same summary jurisdiction, as other members of the bar of this court. United States v. Maresca (D. C.) 266 F. 713, 717.

By reason of their public position, moreover, they should be particular always scrupulously to observe and obey all orders of the court. A law-abiding attitude specially becomes prosecutors and government agents.

I think that such disregard of the orders of the court as I have found herein is unlikely to occur again, for the curious practice situation we have here will probably not repeat itself. But any future instance even of such technical contempt should, I think, be punished by more than a reprimand.