**COLGROVE et al. v. UNITED STATES.**

No. 11832.

United States Court of Appeals
Ninth Circuit.

Aug. 8, 1949.

Rehearing Denied Sept. 19, 1949.

Morris Lavine, Los Angeles, Cal., for appellants.

James M. Carter, U. S. Atty., Ernest A. Tolin, Chief Asst. U. S. Atty., Norman W. Neukom and Tobias G. Klinger, Asst. U. S. Attys., Los Angeles, Cal., Arthur A. Dickerman, Washington, D. C., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from a judgment holding the appellants in criminal contempt of a preliminary and permanent injunction issued under 21 U.S.C.A. § 332(a), a provision of the Federal Food, Drug and Cosmetic Act.

The corporate appellant is controlled by the individual appellant Colgrove. For a number of years Colgrove has been marketing through this or other companies two products, Colusa Natural Oil and Colusa Natural Oil in capsules, and has advertised them on a national scale as remedies beneficial in the treatment of various skin diseases. His court experience in this respect is of significance. In a case decided in 1947, United States v. 9 Bottles "Coluso Natural Oil," D.C., 78 F.Supp. 721, there were findings that the products are composed of crude petroleum oil and are of no value in the treatment of skin affections; and that their use in some circumstances may even be harmful. Numerous actions have been resorted to by the government in all parts of the country for the condemnation of the products because of the asserted illegal introduction of them in commerce, in most of which proceedings judgments for the complainant were taken by default.[1] In 1942 Colgrove and a corporation he controlled were convicted in the District Court for the Northern District of California of violating the Act by the interstate shipment of misbranded drugs.[2]

In 1945 appellants changed the labeling of the Colusa Oil preparations so that the labels failed to mention any maladies for which the drugs were recommended. However, they then proclaimed the worth of the products in the treatment of specified ailments extensively in newspaper advertisements. Early in 1947 the United States sought an injunction in the court below restraining the shipment of the products in interstate commerce without a label containing adequate directions for their use in the treatment of all conditions for which they were prescribed, recommended and suggested in the advertising material. The action was predicated on 21 U.S.C.A. § 352 (f) (1), which provides that a drug or device shall be deemed to be misbranded unless its labeling bears adequate directions for use.[3] A preliminary injunction was granted, D.C. 83 F.Supp. 880, after which the court issued a permanent injunction with appellants' consent. Appellants then devised a label on which it was stated that

---

[1] Consult Federal Security Agency publications, "Notices of judgment under the Federal Food, Drug and Cosmetic Act, Nos. 1383 and 2087," dated April 1946 and December 1947, respectively.

[2] The conviction was set aside by this court because of rulings on evidence, Empire Oil & Gas Corp. v. U. S., 9 Cir., 136 F.2d 868, and on remand there was a plea of nolo contendere and sentences of fine and imprisonment were imposed.

[3] Interpretative regulations of the Federal Security Administrator, promulgated pursuant to 21 U.S.C.A. § 371(a), provide that directions for use may be inadequate by reason of omission, in whole or in part, of directions for use "in all conditions for which such drug or device is prescribed, recommended, or suggested in its labeling, or in its advertising disseminated or sponsored by or on behalf of its manufacturer, [or] packer * * *." Section 2.106(a), Title 21 Code of Federal Regulations 1943, Cum. Supp., p. 5224, as amended by 1946 Supp., p. 2952.

the products were intended for use in the treatment of four skin diseases, namely psoriasis, eczema, athlete's foot, and leg ulcers. Specific directions as to the method of use for these affections were incorporated in the label. The newspaper advertising was thereupon changed in such manner as to highlight these four diseases; but the advertising contained, in addition, reports of benefits derived in the treatment of other skin diseases not mentioned on the label, no adequate directions for use being given. Among the other skin affections referred to are poison ivy or oak, and acne, these conditions being mentioned in excerpts from testimonials received from doctors and druggists, and from letters of satisfied customers.

Thereupon the government filed a contempt information containing nine counts, predicated on allegations of nine interstate shipments. The charge in each count is that appellants disregarded the injunctive orders in that the advertising material disseminated by them prescribed, recommended and suggested the use of the oil in the treatment of certain diseases in addition to the four mentioned on the label, and that adequate directions for using the remedy for those diseases were not printed on the label. The information is based on 21 U. S.C.A. § 332(b). A jury and special findings were waived and upon trial to the court appellants were adjudged guilty on eight counts.

Numerous arguments for a reversal are advanced but few of which are worthy of discussion. The first point urged is that the court lacked jurisdiction of the subject matter and of the parties. There was no lack of jurisdiction of either. Appellants themselves appeared voluntarily. The Act prohibits the introduction into interstate commerce of any misbranded drug. 21 U.S.C.A. § 331(a). A drug is deemed misbranded if its labeling bears inadequate directions for use, 21 U.S.C.A. § 352(f) (1); and as appears in footnote 3 above the authoritative regulations declare directions inadequate if there is an omission of directions for use in all conditions for which the drug is prescribed, recommended or suggested in advertising matter spon-

sored by the manufacturer or distributor. The court's statutory authority for the issuance of the injunctions and for the trial of violations thereof is ample and has already been indicated.

A large part of appellants' brief is devoted to collateral attacks on the injunctions, but since they were not appealed from and no modification was sought they are immune from challenge for mere error. It is settled law that unless an injunction is void its propriety must be tested by appeal and not by disobedience. Clarke v. Federal Trade Commission, 9 Cir., 128 F. 2d 542, and authorities there cited. Cf. also United States v. United Mine Workers, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L. Ed. 884.

As already seen, the injunctions prohibited appellants from introducing their Colusa Oil into commerce without a label containing adequate directions for use in the treatment of all conditions for which the product is "prescribed, recommended and suggested" in their advertising material, that is to say, the key words in the orders were employed conjunctively, not disjunctively as they might have been under the administrative regulations. Colgrove was quick to seize upon the discrepancy, and he steered his course so as to sail as closely into the wind as he thought he safely could. His primary claim both below and here is that while the advertising matter relating to diseases other than the four mentioned on the label may be taken as "recommending and suggesting" the use of the oil, its use is not therein "prescribed" for the other diseases, hence the literal terms of the injunction were observed. We are of a contrary opinion.

The advertisements address themselves to "Skin Sufferers." Photographs of the skin before and after treatment for eczema and leg ulcers are shown, and these two diseases, together with the remaining two mentioned on the labels, are named in large type. Following that, in small type, are columns headed "summary of clinical reports on 28 cases," "thousands of doctors are Colusa customers," "excerpts from reports by druggists," and "thousands of users write letters of praise." These sub-

headings refer indiscriminately, not only to the four diseases mentioned in the label, but also to acne and poison ivy or oak, and in the letters from lay users to a number of other skin conditions as well. We append in the footnote excerpts from the material emanating from professional sources.[4]

Little comment need be made on this advertising; it speaks for itself. Plainly the sponsor intended to be understood as adopting as his own the quoted statements of the doctors and professional dispensers of the preparation. That these would be taken by the lay reader as unqualifiedly prescribing the use of Colusa oil in the treatment of acne and poison ivy, or oak, admits of no fair doubt.[5] The term "prescribe" is given the following definition by Webster: "Med. To direct, designate, or order the use of, as a remedy."[6] The word "designate," in turn, is defined as "to mark out and make known; to point out; to indicate." Neither logic nor fairness requires a narrower definition of the term when employed in flamboyant advertising like the present. The word "prescribe" of course includes recommending and suggesting.

Other points urged are unworthy of specific attention.

Affirmed.

---

[4] "Summary of Clinical Reports On 28 Cases

"A doctor who owns a hospital in Texas reported under oath that in a clinic of 20 cases of psoriasis, '16 cleared of all lesions completely in 30 days—4 were 70% clear and continued treatment; that out of 40 cases of eczema all but three were cleared of all lesions in 3 weeks to a month with prognosis of the three good for recovery, that out of 11 cases of athletes foot all, save one who did not return for treatment, were completely cured—8 to 14 days for acute cases and 3 weeks for chronic cases; that out of three cases of leg ulcers complete healing resulted in all 3 of the cases in a month, and in 8 cases of poison ivy or oak, complete cures were effected in an average of 5 days.' His report states, 'not in a single case of this clinical group did I meet with toxic bad effects * * * Intolerance or flareups. * * * Colusa may be used near the eyes without danger * * * it relieves itching quickly. A little of the oil covers large areas. It is non-irritating. Soothing to raw and denuded lesions and affected areas. Easily massaged into the skin.

"Two other doctors make similar glowing clinic reports—one, a United States Government health physician reporting on 25 cases, and the other a Mexican Government health physician reporting on 43 cases."

"Thousands of Doctors Are Colusa Customers

"Excerpts from a Few of Their Reports

"New York—Dr. C.—practiced 10 years * * * (Case b) 'Poison ivy on entire body. Intense itching and swelling, itching stopped almost immediately on application of Colusa prod. and had entirely cleared in 5 days.'
*            *            *            *            *
"Ohio—Dr. H.—practiced 44 years * * * (Case b) 'acne, 3 cases, all improving.' "

"Excerpts from Reports by Druggists

"Nebraska druggist—99% pleased customers. Stubborn cases: * * * 'Worked wonderfully acne.' "

[5] In the stipulation of facts made on the trial appellants impliedly concede that the advertising prescribed the use of the oil for the four diseases mentioned on the label. Colgrove appears to make a like concession in his oral testimony. There is no valid ground for the attempts to distinguish between the language employed in references to these four diseases and that relating to others referred to by the doctors and druggists.

[6] Webster's New International Dictionary, 1937 Ed. Unabridged.