**YANISH v. BARBER.**

No. 13836.

United States Court of Appeals
Ninth Circuit.

March 22, 1954.

See, also, 9 Cir., 203 F.2d 673.

———————

Gladstein, Andersen & Leonard, Lloyd
E. McMurray, Allan Brotsky, Benjamin
Dreyfus, Francis J. McTernan, Jr., San
Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., C. Elmer
Collett, Asst. U. S. Atty., San Francisco,
Cal., for appellee.

Before HEALY, ORR, and POPE, Circuit Judges.

HEALY, Circuit Judge.

Appellant petitioned the district court for an order holding appellee, District Director of Immigration and Naturalization, in contempt of an injunction earlier issued by the same court, but by a different judge. The court declined to issue a show cause order and dismissed the petition. We think its action was error.

Following is a summary of the factual background of the case: Appellant, hereafter referred to as the petitioner, is an alien who lawfully entered the United States in 1917, at the age of seven, and has since continuously been a resident here. In April 1946 he was arrested on a warrant charging him with being in the United States in violation of the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137,* in that since entry he was a member of an organization that advises, advocates, or teaches the overthrow, by force or violence, of the government of the United States. Pending final disposition of the charge he was released under a bond in the sum of $500 conditioned as required by the then statute, 8 U.S.C.A. § 156,† namely, that he be produced when required for hearing or hearings in regard to the charge, and for deportation if ultimately determined to be unlawfully within the United States.

At a hearing in July of 1949 he was advised by the Immigration and Naturalization Service that as condition of his continuance at liberty he would be required to post a bond in the enlarged sum of $5,000, such bond to contain also a provision obliging him to report personally to an office of the Service at stated intervals. Petitioner thereupon

brought in the District Court for the Northern District of California a proceeding for injunctive relief asking that one Phelan, the acting district director of the Service, and his officers and agents, be enjoined and restrained from enlarging the amount of the delivery bond and from revising or amending it by insertion of the requirement as respects periodic visits.[1]

Thereafter on July 28, 1950 the court (Judge Lemmon) entered a judgment denying the relief prayed in so far as concerned the increase in the amount of the bond. However, the order recited that the petitioner was entitled to injunctive relief against "requiring [him] to revise or amend the said bail bond by requiring periodic visits from him to the Immigration Service, or in any other particular except as to the principal amount of said bond." As to this phase of the matter the judgment provided: "It is the order of the Court that respondents are permanently enjoined and restrained from requiring the petitioner to revise or amend the said bail bond by requiring periodic visitation by him to the Immigration Service." Upon entry of the judgment the petitioner posted a delivery bond in the sum of $5,000, minus the condition banned by the court, and was released.

So the situation rested for more than two and a half years, during which time petitioner complied with the terms of the bond. On March 9, 1953 he was notified by appellee to appear at the office of the Service on March 16 following for the purpose of executing a new bond, the proposed conditions of which, other than that relating to delivery, are set forth on the margin.[2] He was further advised

* Now Immigration and Nationality Act, 1952, 8 U.S.C.A. § 1182.

† Now Immigration and Nationality Act, 1952, 8 U.S.C.A. § 1252(a).

1. Subsequently, by stipulation, appellee Barber was substituted as defendant in lieu of Phelan.

2. "(a) That said alien shall notify the Officer in Charge of the Immigration and Naturalization Service, 630 Sansome Street, San Francisco, California, of any

change in residence or employment, within the immigration district, within forty-eight hours after change is made;

"(b) That said alien shall apply to the Officer in Charge of the Immigration and Naturalization Service, 630 Sansome Street, San Francisco, California, for permission to change place of residence from one immigration district to another at least forty-eight hours prior to such change;

by the officer that notwithstanding the injunctive order of Judge Lemmon he would be arrested and imprisoned unless the demanded bond was posted by 4:30 p. m. of the date mentioned.[3] Thereupon, on March 16, 1953 he commenced this proceeding asking that appellee be adjudged in contempt of Judge Lemmon's order. (On the same date he received notice than an order of deportation theretofore made against him by the Immigration Service had been affirmed by the Board of Immigration Appeals. This action of the appellate board, rendering final the deportation order, appears to have been entered on March 11, 1953.)

The court, as already indicated, declined to require appellee to show cause why he should not be held in contempt for demanding a bond conditioned as aforesaid and for threatening to imprison petitioner for failure to comply with the demand. Instead, it summarily dismissed the petition on the day filed, predicating its order on the terms of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq., which had become effective December 24, 1952.

Government counsel concede that at the time of the issuance of Judge Lemmon's injunction there was no statutory authority vested in the Service to require periodic visits or to impose like onerous restrictions as a condition of a delivery bond. They rest appellee's case on the subsequent enactment by Congress of the aforementioned Immigration and Nationality Act, and specifically on § 242 (c) thereof, 8 U.S.C.A. § 1252(c), reading in pertinent part as follows:

"(c) When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe. * *"

Counsel's position is that the action taken by appellee was authorized by this subsection and by regulations of the Attorney General promulgated pursuant thereto, and such being the case the existing injunction afforded no obstacle.

"(c) That said alien shall report in person on the first Monday of each month between the hours of 10:00 a. m. and 4:00 p. m. to the Officer in Charge of the Immigration and Naturalization Service, 630 Sansome Street, San Francisco, California;

"(d) That said alien shall terminate and remain disassociated from, membership in, if any, support or other activity, if any, in or in furtherance of the doctrines and policies of, the Communist Party of the United States, the Communist Political Association, the Communist Party of any state, or of any foreign state, or of any political or geographical subdivision of any state, any section, subsidiary, branch, affiliate, or subdivision of any such group or organization;

"(e) That such alien shall refrain from association with any person, knowing or having reasonable ground to believe that such person is a member of or affiliated with or is engaged in any promotion of any of the activities mentioned in subparagraph (d) above;

"(f) That said alien shall not violate section 2385 of the 'Smith' Act of June 25, 1948 (section 2385 of Title 18, U.S. Code) and section 4 of the Internal Security Act of September 23, 1950 (section 783 of Title 50 U.S.Code [50 U.S. C.A. § 783]); * * *."

3. Petitioner was in fact taken into custody on March 17, 1953 for failure to furnish the bond demanded, and he at once petitioned for a writ of habeas corpus. Upon denial of the writ on March 25 he took an appeal and on May 16, 1953 was released on bail pending appeal by order of United States Supreme Court Justice Douglas. Yanish v. Barber, 73 S.Ct. 1105, 97 L.Ed. 1637. The appeal from the denial of the writ of habeas corpus (No. 13785) has been dismissed by this court on the ground of mootness, the dismissal not being contested. 211 F.2d 471.

Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 59 U.S. 421, 15 L.Ed. 435, is cited as a controlling precedent.

This would be a formidable argument to meet if § 242(c) were to be deemed applicable in the situation before us. But its applicability here, if any, must be considered in light of the broad and comprehensive savings clause embodied in the Act. The clause, § 405(a), 8 U.S.C.A. § 1101 note, reads in material part as follows:

"(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any * * proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, * * * liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [statuses?], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * * "

■■ It would appear from the language of this reservation that Congress, as a measure of policy or precaution, intended to preserve the effectiveness of all subsisting proceedings, orders, or judgments fixing or determining individual statuses, obligations, liabilities, or rights; and for this purpose to have continued in force the statutes or parts thereof under which such status, obligation, liability or right became fixed or determined.[4] The pertinency of the clause to Judge Lemmon's injunctive order seems apparent. The jurisdiction of the court over the subject matter of that proceeding did not terminate with the granting of the injunction. It persisted, and the cause continued to be pending in the sense that either party might move the court for further action enforcing or modifying the order. In sum, the proceeding and order were valid and subsisting as of the time the Act took effect. Cf. In the Matter of Robles-Rubio, D.C., 119 F.Supp. 610.

■■ We feel constrained to observe that, even apart from the savings clause, the appropriate procedure for appellee to pursue as a public officer would have been to move for a modification or vacation of the injunction. Cf. Sawyer v. Dollar, 89 U.S.App.D.C. 38, 190 F.2d 623. It was not for him, any more than it would be for a private individual in like circumstances, to decide that an injunctive order running against him had been rendered nugatory by subsequent legislation. His course should be to obey it unless and until set aside in proceedings brought for that purpose. In the recent case of United States v. United Mine Workers of America, 330 U.S. 258, at page 293, 67 S.Ct. 677, at page 696, 91 L.Ed. 884, the Court, discussing the contention of the Mine Workers that an order which is erroneous or moot may be disobeyed, remarked that it found "impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued."

Accordingly the judgment of dismissal is reversed and the cause is remanded with directions to the court to issue an order requiring appellee to show cause, if any he has, why he should not be held in contempt, and to take such further steps, not inconsistent with this opinion, as may be thought appropriate.

---

4. The subsequent act of Congress animating the Wheeling Bridge case, supra, contained no savings clause or reservation of any sort, and the decision of the Court, with which a substantial minority of the justices disagreed, can not fairly be regarded as in point here.