Nat YANISH, Appellant,

v.

Bruce G. BARBER, District Director of Immigration and Naturalization Service, Appellee.

No. 14518.

United States Court of Appeals Ninth Circuit.

April 2, 1956.

Gladstein, Andersen, Leonard & Sibbett, Norman Leonard, Dreyfus & McTernan, Francis J. McTernan, Jr., San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HEALY and FEE, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This case concerns a further chapter growing out of the deportation proceedings against Yanish. The question presented is whether the district court, having found appellee Barber, in "technical" contempt of the order of that court, erred in refusing to impose any sanction upon appellee or to award any reparation to appellant Yanish.

The factual background of the case is set forth at length in Yanish v. Barber, 9 Cir., 1954, 211 F.2d 467, a previous appeal in this same case.

Yanish, an alien, was arrested in 1946 on a warrant charging him with being in the United States in violation of the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137,* in that since entry he was a member of an organization that advises, advocates, or teaches the overthrow, by force or violence, of the government of the United States. He was released on bond in the sum of $500.00 under the then effective statute, 8 U.S.C., § 156.

In 1949 he was advised by the Immigration and Naturalization Service that he would be required to post a bond in the sum of $5,000, containing provisions requiring frequent reports at stated intervals to an officer of the Service. Yanish then brought the action from which this case arises, seeking an injunction restraining the Acting Director of the Immigration and Naturalization Service from increasing the bond, and from revising or amending it by insertion of the requirement concerning periodic reporting. On July 28, 1950, the district court (Judge Lemmon) entered a judgment denying Yanish relief concerning the increase in the bond, but providing in part, "that respondents are permanently enjoined and restrained from requiring the petitioner to revise or amend the said bail bond by requiring periodic visitation by him to the Immigration Service." Yanish posted the bond in the increased sum of $5,000, and was released.

On March 6th and on March 9th, 1953, Yanish was notified by Barber, the appellee herein, then District Director of the Immigration and Naturalization Service, to appear at the office of the Service on March 16th, following, for the purpose of executing a new bond that imposed conditions concerning notifying the Service of changes in residence or employment, of seeking permission to change residence, of reporting in person at fixed times, of terminating membership, if any, in the Communist Party of the United States, of refraining from certain associations and of refraining from violating the Smith Act, 18 U.S.C.A. § 2385, all of which proposed conditions are fully set forth in note (2) in the prior decision in this case, Yanish v.

* Now Immigration and Nationality Act, § 212(a) (27–29), 8 U.S.C.A. § 1182(a) (27–29).

Barber, supra. Yanish was further advised that he would be arrested and imprisoned unless the demanded bond was posted by 4:30 P.M. on March 16, 1953.

On March 16, 1953, Yanish filed in this action a petition, setting forth the foregoing facts and asking that Barber be adjudged in contempt of Judge Lemmon's order. The court (Judge Murphy) declined to issue a Show Cause Order, and denied all relief asked.

This court, in the prior decision in this case, reversed and remanded with directions to the court below "to issue an order requiring appellee to show cause, if any he has, why he should not be held in contempt, and to take such further steps, not inconsistent with this opinion, as may be thought appropriate." Yanish v. Barber, supra, at page 470.

Meanwhile, following Judge Murphy's declination on March 16, 1953, to issue the Order to Show Cause, Yanish was arrested on March 17, 1953, in the deportation proceedings. The deportation order had become final on March 11, 1953, and Yanish had been notified thereof on March 16, 1953.

 We turn first to the petition for contempt in this case, filed in the lower court. Yanish has not seen fit to include that petition in the record on appeal, but we think it pertinent. It was part of the record of the prior appeal, and in any event we may take judicial notice of the petition on file in the district court. Any alleged contempt of Barber must be based upon the allegations of that petition. No supplemental pleading was ever filed. As stated above, it was filed on March 16, 1953, and spoke of events up to that time.

When, pursuant to the mandate resulting from the prior decision, an Order to Show Cause was presented, it was acted on by another district court judge (Judge Harris). It was prepared by attorneys for Yanish, then signed by the court as prepared by them. The Order to Show Cause follows:

"It is hereby ordered that the respondent Bruce Barber be and appear before this Court on the 9th day of June, 1954, then and there to show cause if any he have why this Court should not:

"(1) Hold said respondent in contempt of court for violation of that certain permanent injunction heretofore granted on July 28, 1950, in the within cause, by requiring and demanding of petitioner Nat Yanish a bond conditioned in terms other than those under which petitioner was at liberty pursuant to the said prior permanent injunction of this Court *and by imprisoning the petitioner for failure to comply with the said demands and requirements;*

"(2) Hold said respondent in contempt for violation of the said permanent injunction by threatening to imprison *and by imprisoning the petitioner Nat Yanish;*

"(3) Impose upon said respondent such a fine as will reasonably compensate petitioner for his damages suffered as a consequence of the respondent's said acts, including reasonable costs and attorney's fees incurred by petitioner as a consequence thereof." [Emphasis added.]

The language concerning imprisoning Yanish for failure to meet the demands of Barber, emphasized above, concerned events occurring after the filing of the petition on which the order to show cause was based.

Thereafter a hearing was held before another district judge (Judge Hamlin) and evidence was taken. Only July 12, 1954, Judge Hamlin made the following order:

"Order

"The matter of the return to the order to show cause in the above matter having come on for hearing, and evidence having been introduced and argument heard, and the court being fully advised in the premises finds that *respondent was on March 9, 1953, in technical contempt of the order of Judge Lemmon dated July 20, 1950, enjoining respondent from*

imposing conditions in a delivery bond, when he notified petitioner 'that conditions would be imposed: that respondent was acting in good faith under what he thought was the applicable provisions of the McCarran Act (Immigration and Nationality Act of 1952, Public Law 414, effective December 24, 1952, 8 U.S.C. 1101 et seq.) and by written direction of his superior officer, the Commissioner of Immigration and Naturalization in Washington; that at the time petitioner was taken into the custody of respondent on March 17, 1953, his status under the provisions of Public Law 414' had changed in that on March 11, 1953, the order for deportation of petitioner became final and that he was so notified on March 16, 1953; that on March 16, 1953, a judge of this court declined to entertain petitioner's petition herein and to issue an order to show cause, and that the Court of Appeals for the Ninth Circuit reversed the said order of the District Judge and directed that the order to show cause issue; upon the foregoing:

"It is ordered, adjudged, and decreed that no sanctions be imposed upon respondent, nor reparation be awarded to the petitioner."

It will thus be seen that Judge Hamlin found as a fact that Barber was, on March 9, 1953, in contempt of the order of Judge Lemmon dated July 20, 1950, when he notified Yanish that further conditions would be imposed. Judge Hamlin further found that the status of Yanish, under Public Law 414 had changed, in that on March 11, 1953, the Order for deportation had become final and that Yanish had been so notified on March 16, 1953. Judge Hamlin also found, inferentially, that Yanish was taken into custody on March 17, 1953.

From this Order Yanish has appealed, "insofar as said Order ordered, adjudged and decreed that no sanction be imposed upon respondent, Bruce G. Barber, and insofar as said Order ordered, adjudged and decreed that no reparation be awarded to petitioner, Nat Yanish."

Two questions have been presented, (A) concerning the alleged contempt of March 9, 1953, (B) the alleged contempt for the happenings concerning the arrest of Yanish March 17, 1953, and events thereafter.

■■ Although the trial court in his order refused to impose sanctions on Barber or grant reparations to Yanish, this case has been treated from the inception as a proceeding for a civil contempt. In a civil contempt proceeding the type, character and extent of the relief granted rest upon the trial court's discretion as measured by the showing made. E. Ingraham Co. v. Germanow, 2 Cir., 1925, 4 F.2d 1002, 1003. A fine imposed "must not exceed the actual loss to the complainant caused by * * * violation of the decree * * *." Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 71, 163 A.L.R. 379; Boylan v. Detrio, 5 Cir., 1951, 187 F.2d 375, 379; Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 1905, 135 F. 774, 782, and "the imposition of a fine which bore no relation to the injury suffered * * * was unauthorized", Eustace v. Lynch, 9 Cir., 1935, 80 F.2d 652, 656, "Such fine must of course be based upon evidence of complainant's actual loss * * *", United States v. United Mine Workers of America, 330 U.S. 258, at page 304, 67 S.Ct. 677, at page 701, 91 L.Ed. 884; Christensen Engineering Co. v. Westinghouse Air Brake Co., supra, 135 F. at page 782; Boylan v. Detrio, supra, 187 F.2d at page 379. "Unless it is based upon evidence showing the amount of the loss and expenses, the amount must necessarily be arrived at by conjecture, and in this sense it would be merely an arbitrary decision." Christensen Engineering Co. v. Westinghouse Air Brake Co., supra, 135 F. at page 782; Norstrom v. Wahl, 7 Cir., 1930, 41 F.2d 910, 914.

## A.

*The contempt prior to March 16, 1953*

As to whether the trial judge erred in refusing to impose sanctions or award reparations for the contempt prior to March 16, 1953, we first look to the prior decision in this case, Yanish v. Barber, supra. There, this court properly held that the petition of March 16, 1953, assuming the truth of the facts alleged, presented a showing of contempt and that the trial judge was in error in refusing to grant an order to show cause to bring the matter on for hearing. The gist of the showing made below for contempt can be summarized as follows:

(1) The order of Judge Lemmon enjoining Barber;

(2) The March 6th verbal instructions by Barber to Yanish to appear on March 16th, and execute a new bond;

(3) The letter of March 9th, 1953 from Barber to Yanish, confirming the March 6th instructions;

(4) The new bond would require new conditions;

(5) Barber threatened to imprison Yanish unless Yanish posted the new bond on or before March 16, 1953 at 4 P.M.;

(6) Allegations that said acts and threats of Barber constituted a violation of the injunction of July 28, 1950;

(7) Relief asked, that Barber be held in contempt and required to reasonably compensate Yanish, and enable him to pay reasonable attorney's fees and costs in the matter.

■ The allegations numbered 1 to 5 above were undisputed at the trial. Thus, under the law of the case from the prior decision the trial court was bound, on the showing made, to find Barber in contempt. It found Barber in contempt, but used the words, "technical contempt." [1]

■■ The purpose of civil contempt is "to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of non-compliance", McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599. By June 12, 1954, the date of Judge Hamlin's order, the first purpose of a civil contempt order referred to above, "to enforce compliance with an order of court," was no longer proper for consideration. The deportation order had become final and Yanish was subject to arrest and had been arrested. Any problem, concerning bonds, effective only until final order of deportation, was moot (See Point B, hereafter).

There remained before the court only the question of compensation to the allegedly injured party for loss or damage, if proved.

There was no dispute or conflict in the testimony. The major part of the showing made by Yanish was devoted to events occurring after March 17. He described at length his imprisonment, the jail, the food. Yanish testified he employed Gladstein, Andersen and Leonard as attorneys in the present case. He then testified he had employed *other attorneys* in a habeas corpus matter and to secure bail. These proceedings related to events after his imprisonment on March 17, 1953. As to these other attorneys, he testified he had not paid them, nor had they presented a bill. He also testified that the fee of these other attorneys was to be arranged at the end of "these hearings." No similar testimony was offered as to the attorneys in the contempt proceedings.[2]

As to fees and costs, receipted bills on the bill head of the Clerk of the United

---

1. In re Sylvester, D.C.N.Y.1930, 41 F.2d 231, at page 232, held that Sylvester, an Assistant U. S. Attorney and Lynch, a Custom Agent were in "technical" contempt of court, where relying on negotiations between the parties, they permitted several hours to transpire before they took an appeal from an order and were meanwhile in defiance of the order. The penalty imposed was "they are both hereby reprimanded."

2. It is apparent from reading the transcript that counsel for Yanish believed the gravamen of his claim for reparation arose from the arrest on March 17, 1953.

States Court of Appeals, with the stamped notation "paid" were offered in evidence, as follows:

(a) Estimated expense of printed record (in action No. 13,836, the prior appeal) $150.00

(b) Bill for the habeas corpus matter 65.00

(c) Docket fee in the contempt matter 25.00

(d) Printing 42.05

(e) 2 bills for $10.00 each for cost bonds 20.00

Counsel for Barber objected. "I would like to know who paid them. The bills speak for themselves as far as their being paid. Undoubtedly they were paid * * * but whether it was any expense for this petitioner you will have to prove it * * *," and "Objection if the court please, no foundation laid. Immaterial and irrelevant."

"The Court: I think the objection will have to be sustained, counsel.

"Mr. McMurray: (for Yanish) I am afraid so."

There was then offered in evidence a printing bill marked "paid" and addressed to Gladstein, Andersen and Leonard, for appellant's opening brief in the prior appeal, for $191.43. The same objection and ruling were made.

"The Court: I take it the position of counsel is, although the bills were paid by somebody, there is no showing they were paid by petitioner.

"Mr. McMurray: (for Yanish) That may be."

"Mr. Collett: (for Barber) That is right * * *".

"The Court: Did petitioner ever pay them to you? * * *

"Mr. McMurray: I am not able to state. If he has not paid them he certainly owes them. * * *

"The Court: Who paid Gladstein, Andersen and Leonard for it, did he pay them?

"Mr. McMurray: I don't know the answer to that, your Honor."

Mr. McMurray then made an offer of proof that Gladstein, Andersen and Leonard had paid the bills and the court indicated it might be the link in the chain of proof, and accepted the stipulation of counsel that they were paid by the law firm. No proof was ever offered as to whether Yanish ever paid the bills or was obligated to pay them. This is the entire record on reparations prior to the arrest on March 17, 1953, and it boils down to the fact that attorneys represented Yanish and that attorneys paid various bills.

This is not the ordinary case where no question is raised as to whether the client had paid or was obligated to pay the attorney's fees and costs. Barber asked that Yanish be put to his proof on the issue. It was not an unreasonable objection and this proof was within the ability of Yanish to supply, if true, by his oral testimony. The court sustained the objection and counsel for Yanish, in substance, agreed it had to be sustained.

Although Yanish was called to the stand after the colloquy on the bills, no questions were asked him as to whether he had paid the bills or was obligated to pay them. Nor was he asked if he had paid or was obligated to pay attorneys who handled the contempt proceedings. He merely testified he had not paid the attorneys who effected his release from imprisonment, and they had not presented a bill.

Had the district court found that on the uncontradicted record there was no substantial showing of damage to Yanish nor any showing of an obligation on the part of Yanish to pay the fees of attorneys and court costs in the contempt proceedings and the prior appeal; and had the district court based its order on such ground and not on the ground of good faith on Barber's part, this case would have given us little concern.

 It is not the function of this court to make findings of fact which a trial court should have made. Campbell v. Campbell, 1948, 83 U.S.App.D.C. 237,

170 F.2d 809, 810. " * * * the reviewing court does not review the evidence as an original fact finding tribunal", Campana Corp. v. Harrison, 7 Cir., 1940, 114 F.2d 400, 405.

But not every case, where there is a failure to make findings must be sent back to the district court. "The fact that the district judge made no findings and announced no conclusions upon this issue, does not require remand, since the record is complete", Hazeltine Research, Inc., v. General Motors Corp., 6 Cir., 1948, 170 F.2d 6, 10.

Moore's Federal Practice (2d Ed.) Vol. 5, states at p. 2662, "The failure of the trial court to comply with Rule 52, while characterized as a dereliction of duty does not demand a reversal 'if a full understanding of the question presented may be had without the aid of separate findings,' " quoting from Shellman v. Shellman, 1938, 68 App.D.C. 197, 95 F.2d 108, 109, and citing cases.

A recognized exception to the general rule, requiring a case to be sent back for lack of findings, is where " * * * the record considered as a whole does not present a genuine issue as to any material fact * * *". Burman v. Lenkin Const. Co., 1945, 80 U.S.App.D.C. 125, 149 F.2d 827, 828. See Urbain v. Knapp Brothers Mfg. Co., 6 Cir., 1954, 217 F.2d 810, 816, 817, quoting Burman v. Lenkin Const. Co., supra, with approval. So when the facts are undisputed, though no finding is made, the case need not be remanded, Sbicca-Del Mac, Inc., v. Milius Shoe Co., 8 Cir., 1944, 145 F.2d 389, 400, and cases cited; Aetna Life Ins. Co. v. Meyn, 8 Cir., 1943, 134 F.2d 246, 249.

"In the review of judicial proceedings the rule is well settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 1937, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224; Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 1951, 188 F.2d 558, 563; Taylor v. Hubbell, 9 Cir., 1951, 188 F.2d 106, 108, certiorari denied 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618; Lewellyn v. Electric Reduction Co., 1927, 275 U.S. 243, 248, 48 S.Ct. 63, 72 L.Ed. 262.

It is true that where a contempt is found and damages are found to result therefrom, the trial court has no discretion, but is required to assess the damage against the respondent. But in this case, when the matter was heretofore appealed, no contempt had been found in the lower court and no damage had been proven by petitioner. On the appeal, the sole question was whether the trial court was in error in refusing to issue an order to show cause to respondent. Now, since the facts have been tried for the first time and a technical contempt has been found, but no damage, our province is only to consider whether or not the judgment is correct. The sole problem is whether damages must have been awarded as of right. Since no damage was proved by petitioner, a negative finding to that effect was unnecessary.

In view of the lack of dispute or contradiction in the record, this case should not be remanded for further findings. The petitioner entirely failed to carry the burden of proof to show that he suffered damages which were the proximate result of the violation of the letter of the order. On the record, the trial court did not err in refusing to order reparation to petitioner or to impose the sanction of a compensatory fine. See Keehn v. Alaska Industrial Board, 9 Cir., 1956, 230 F.2d 712, 714, where, though the findings were "not artful," the alternative of sending the case back to the District Court for more detailed findings, was characterized as "an idle act, since we think the court clearly indicated the basis for its decision."

We believe our prior decision in Yanish v. Barber, supra, was correctly decided and nothing said herein indicates any retreat from it.

Public officials "should * * * always scrupulously * * * observe and obey all orders of the court.

A law-abiding attitude specially becomes prosecutors and government agents * * *," In re Sylvester, D.C.N.Y. 1930, 41 F.2d 231, 236, " * * * It is settled law that unless an injunction is void its propriety must be tested by appeal and not by disobedience. Clarke v. Federal Trade Commission, 9 Cir., 128 F. 2d 542, and authorities there cited. Cf. also United States v. United Mine Workers, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884. * * *" Colgrove v. United States, 9 Cir., 1949, 176 F.2d 614, 616, certiorari denied 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561. As well said by Judge Healy, in the prior appeal, " * * * the appropriate procedure for appellee [Barber] to pursue as a public officer would have been to move for a modification or vacation of the injunction. Cf. Sawyer v. Dollar, 89 U.S. App.D.C. 38, 190 F.2d 623. It was not for him, any more than it would be for a private individual in like circumstances, to decide that an injunctive order running against him had been rendered nugatory by subsequent legislation. His course should be to obey it unless and until set aside in proceedings brought for that purpose. * * *" Yanish v. Barber, supra, 211 F.2d at page 470.

There has been a finding by a U. S. district court of contempt on the part of an official of the government, and a record thereof in the official reports of this court. We think the policy of the law to require a respect for court orders has been vindicated by the decision made.

## B.

*The alleged contempt of March 17, 1953 et seq.*

There are various reasons, all valid, why there was no error by the district court in refusing to impose sanctions on Barber, or award reparation to Yanish for the events of March 17, 1953 and thereafter.

 1. The matter was not before the court on the pleadings. The pleadings spoke as of the date of filing on March 16, 1953, and since no supplemental pleadings or affidavits were filed, the court could try only the issues as to the events up to March 16, 1953.

The order to show cause, insofar as it made reference to the imprisonment, was unsupported by any matter in the pleadings and may be disregarded as surplusage.

 2. But considering the events of March 17, 1953 and following as here before us, as did the trial court in taking testimony thereon, Yanish still cannot prevail. We take judicial notice of the files of this court on the prior appeal. The petition for contempt filed on March 16, 1953, referred to the bond on which Yanish was then at liberty, and which Barber was demanding be supplanted by another bond, and the bond itself was attached as an Exhibit to the petition. The conditions of this bond were two-fold: (1) that the alien be surrendered to the Service for defending himself against "charges under which said alien has been taken into custody and any further charges which subsequently are lodged against him, and further, notwithstanding any delivery of said alien for hearing or hearings pursuant to the foregoing conditions, (2) if, in case the said alien is found to be unlawfully within the United States * * * the above-bounded obligors, or either of them, shall cause the said alien to be delivered into the actual physical custody of an officer of the United States Immigration and Naturalization Service, upon and pursuant to the request of said officer * * * for deportation under the aforesaid warrant of deportation."

Since the deportation order became final on March 11th, and Yanish was notified thereof on March 16, 1953, there is no doubt that there was an obligation on the part of Yanish on March 17, 1953, to surrender himself for deportation, and an obligation on the part of his bond to surrender him for deportation. The imprisonment would logically follow.

 3. It is argued that the showing made by Barber in the trial court below, indicated that the arrest of

March 17, 1953 was for the purpose of requiring the new bond and not for deportation. Regardless of Barber's intention in arresting Yanish, the deportation order was final on March 11, 1953, and Barber had a legal right to order the arrest of Yanish on March 17, 1953. Any damage suffered by Yanish in connection with the subsequent imprisonment or in the employing of attorneys in connection therewith was at best damage without injury, for which the district court properly denied reparation or sanction.

The judgment is affirmed.

HEALY, Circuit Judge (dissenting).

I am entirely satisfied that Yanish's bondsmen, by the terms of his existing bond, were obliged to surrender him if and when he was finally determined to be unlawfully within the United States, and this regardless of whether or not there was any statutory requirement that he then be taken into custody. In short, I agree that as a matter of law he was not entitled to be indemnified on account of his imprisonment following March 16, 1953 (when his deportability was finally determined), or on account of expenses incident to that imprisonment.

But Barber's demand for a new bond, or in lieu thereof Yanish's surrendering himself, was made on March 6, 1953, prior to the final determination of deportability. Our opinion on the former appeal, Yanish v. Barber, 9 Cir., 211 F. 2d 467, stands for the proposition that that demand or requirement constituted a contempt of Judge Lemmon's injunction. We did not characterize Barber's disregard of that injunction as a "technical contempt," whatever that phrase means. We held, 211 F.2d 470, that altogether apart from the effect of the savings clause "the appropriate procedure for appellee to pursue as a public officer would have been to move for a modification or vacation of the injunction. * * * It was not for him, any more than it would be for a private individual in like circumstances, to decide that an injunctive order running against him had been rendered nugatory by subsequent legislation. His course should be to obey it unless and until set aside in proceedings brought for that purpose." In the face of this language, Judge Hamlin was not warranted in finding on remand that Barber's conduct was mere "technical contempt." Nor was the judge warranted in giving as a further reason for not imposing sanctions the circumstance that "respondent was acting in good faith under what he thought was the applicable provisions of the McCarran Act." This court had flatly rejected that view, also.

In sum, the district judge made but two factual findings in support of his order decreeing that "no sanctions be imposed upon respondent, nor reparations be awarded to the petitioner." These findings, as above indicated, were (1) that respondent was in mere "technical contempt of the order of Judge Lemmon" and (2) "that respondent was acting in good faith under what he thought was the applicable provisions of the McCarran Act." He did not find or intimate that evidence was lacking in support of a reparations award. It has remained for my associates to attempt laboriously the making of such a finding for him, in effect converting this appellate tribunal into a trial court.

I would reverse the order and remand the cause to the district court with direction to make appropriate findings of the facts bearing upon the problem of an award, independently of the "good faith" of the respondent, or of the supposed "technical" nature of the contempt which he committed.