I
SCHWELB, Associate Judge:
Appellant D.D. (the mother) asks us to reverse a judgment holding her in civil *40 contempt for noncompliance with a court-approved Stipulation and/or Order[1] directing that the passport of her son L.T., now seven years of age, be held in escrow by her counsel until further order of court or mutual agreement of the parties. The purpose of the escrow provision was to assure that L.T. would not be taken out of the country, to the prejudice of any visitation rights of appellee M.T. (the father).
In her initial brief in this court, prior to oral argument, the mother, who has been represented by counsel throughout, grounded her appeal on four separate contentions, all of which were predicated on the assumption that the “Stipulation and/or Order” constituted an order of the court binding on her. That assumption also characterized the mother’s position in the trial court.
During oral argument, a member of this court, sua sponte, raised two additional issues not previously addressed by the parties. The first of these issues was whether the document signed by the parties and the court on November 14, 1985, with which the mother allegedly failed to comply, was a stipulation, enforceable only through contractual remedies, or a court order enforceable by contempt. The second issue so raised was whether, assuming that the document was a court order, it was enforceable against the mother (as distinguished from the mother’s attorney, to whom the specific command said to have been violated was directed). The parties were permitted to, and did, file supplemental post-argument briefs on these issues.
Having considered these submissions, we hold that all of the contentions made in the mother’s original brief are without merit. Although the new arguments in the mother’s supplemental brief are somewhat more persuasive, no clear miscarriage of justice would result from our holding the mother to the positions taken by her counsel both in the trial court and in this court prior to oral argument. Accordingly, we affirm.
II
D.D. and M.T. were married in the District of Columbia on October 2, 1980. L.T. is their only child. The parties separated in July 1985. The mother filed for a divorce, and the father counterclaimed for the same relief. Each party requested custody of L.T. and sought child support from the other parent.
On November 14, 1985, to quote the mother’s brief on appeal,
D.D. and M.T. agreed to a stipulated order to resolve then pending issues about pendente lite relief with respect to custody, visitation, and support of their minor child, L.T.
The “stipulated order” to which the mother was referring was headed “Stipulation” and contained language generally cast in terms of what each party was agreeing to do, rather than in terms of judicial command. Paragraph 6 provided:
The parties hereby reaffirm their dedication to the principle that they, rather than judges, doctors or psychologists, are responsible for and best able to make sound decisions for their son, with expert advice where appropriate. Accordingly, they agree that they will attempt to work together, cooperatively and in good faith, to foster the best interests of their son. However, each party reserves the right to have this Court make a final determination as to L.T.’s custody and related matters at any time.
The document was signed by Judge Herbert B. Dixon, who wrote in the date (11/14/85). The names and signatures of each of the parties appear below the word “Approved,”[2] and the names and signatures of the attorneys follow below the word “SEEN.”
*41 Substantively, the instrument signed by Judge Dixon provided that the parties would seek necessary therapy for L.T., who was having trouble adjusting to the separation of his parents, and would obtain the recommendation of a mutually agreeable mental health therapist concerning, among other things, a residential program for him. The parties also agreed to “consider carefully all of the therapist’s recommendations.” Paragraph 10 provided that:
Counsel for Plaintiff, Elizabeth Guhring, or any substitute or successor counsel, will hold the child’s passport in escrow until further order of the Court or mutual agreement of the parties.
In conformity with this provision, the mother deposited L.T.’s passport with her counsel.
On March 28, 1986, the parties agreed to the entry of a consent Pendente Lite Order of Custody, Visitation and Support. This order provided as follows:
1. The plaintiff shall have temporary custody of the minor child pending the final divorce hearing.
2. The defendant shall have visitation with the minor child as recommended by the child’s therapist, DR. BELINDA STRAIGHT, pending the divorce hearing.
3. The defendant shall pay child support by paying directly to the Westmoreland Children’s Center the monthly tuition commencing in March, 1986 of approximately Three Hundred Sixty Dollars ($360) per month, pending the final divorce.
Nothing in the new order explicitly addressed the status of L.T.’s passport.
Meanwhile, on March 26, 1986, two days prior to the date that the new order was signed by Judge Wertheim, Dr. Straight had recommended that the father’s visitation with the child be suspended, based on her determination that he had sexually abused the child. The father vigorously contested this accusation. That the child had been sexually abused by someone was later confirmed by Dr. Ronald Bashian, a pediatrician at the Yater Clinic. Dr. Bashi-an diagnosed L.T. as having gonorrhea of the throat, a sexually transmitted disease. In spite of the dispute as to the identity of the abuser, visitation was suspended in conformity with the provision of the pen-dente lite order in which the parties were required to follow Dr. Straight’s recommendation.
Later in the spring of 1986, the mother, who is an anthropologist and travels frequently, told Ms. Guhring that she wanted to leave the country with L.T. in connection with her work. Ms. Guhring instructed the mother that Dr. Straight was responsible for determining whether this would be permissible. Ms. Guhring released L.T.’s passport to the mother after the mother advised her that Dr. Straight had given permission for the trip. The mother then traveled out of the country with L.T. from May 22, 1986 to June 16, 1986, for professional reasons. Upon her return, she gave the passport back to Ms. Guhring.
On September 16,1986, the father filed a motion asking that the mother be held in contempt of court for violating the passport restriction contained in the November 14, 1985 order. On October 27, 1986, Judge Sylvia Bacon issued an oral ruling resolving the issues presented in the cross-complaints for divorce. Judge Bacon granted the mother an absolute divorce, awarded her custody of L.T., and ordered the father to make support payments. In addition, the judge found that the mother had not proved that the father had abused L.T.,[3] ordered that the father be permitted to visit L.T. under therapeutic supervision, and called upon the parties to develop a flexible plan for further visitation. This ruling provided final resolution of all issues dealt with in the November 14, 1985 order. At the October 27 hearing, Judge Bacon also orally found that the mother was in contempt of court and invited comment from the parties on appropriate sanctions.
On December 16, 1986, Judge Bacon issued a written order holding the mother in *42 civil[4] contempt of court and requiring her to deposit L.T.’s passport with the Clerk of the Court, to refrain from obtaining another passport, and to obtain prior court approval for any travel outside the United States for the child. The mother complied with this order as soon as she became aware of it. On January 9, 1987, she moved, pursuant to Super.Ct.Civ.R. 60, for reconsideration of the contempt citation. Six days later, she filed a notice of appeal. On April 10, 1987, Judge Bacon issued an order denying the motion on the grounds that she lacked jurisdiction because a notice of appeal had been filed and, alternatively, on the merits. The mother then filed a second notice of appeal, this one from the order denying reconsideration. The two appeals were consolidated and are now before us.
Ill
Before considering either the mother’s original arguments or those made in her supplemental submission, we briefly address two jurisdictional matters not raised by either party.
A. As noted above, the mother has appealed both Judge Bacon’s order of December 16, 1986 holding her in civil contempt and requiring her, among other things, to deliver L.T.’s passport to the Clerk, and the order of April Í0,1987 denying reconsideration. We think that Judge Bacon was without authority to grant the motion for reconsideration because it was not filed within ten days, as required by Super.Ct.Civ.R. 59(e). See generally Wallace v. Warehouse Employees Union # 730, 482 A.2d 801, 803, et seq. (D.C.1984), holding that where a movant is seeking relief from the original order on the basis of error of law, and not citing new or changed circumstances, the motion is properly made pursuant to Rule 59(e). Accordingly, we affirm her denial of the motion on the grounds that she lacked jurisdiction because that motion was untimely.[5]
B. In this court, the mother has complained as much about the indignity of having been found in contempt of court as about the sanction imposed, namely the requirement that she deposit the passport with the Clerk and not take L.T. out of the country without leave of court. It is evidently undisputed that she has now delivered the passport to the Clerk as required, and has thus purged herself of civil contempt. Accordingly, we believe that a threshold jurisdictional issue is raised as to whether the finding that the mother was in civil contempt is appealable at all.
In Ashcraft v. Ashcraft, 318 A.2d 284, 285 (D.C.1974), this court held that where the trial court has imposed no remedial or coercive sanction conditioned upon compliance with the contempt order, an ad *43 judication of civil contempt lacks the certainty, specificity and finality essential for judicial review. Accord, In re Cys, 362 A.2d 726, 729 (D.C.1976) (criminal contempt). It follows that the embarrassment and unpleasantness of having been found in contempt, without more, will not create a justiciable controversy, and that an individual so adjudicated does not have the right to appeal simply to clear his or her name. See Annotation, Appealability of Contempt Adjudication or Conviction, 33 A.L.R.3d 448 (1970 & 1987 Supp.).
In the present case, the mother was not conditionally imprisoned, nor was a conditional daily fine imposed. These are probably the most familiar sanctions in civil contempt proceedings designed to coerce compliance with the mandate of the court. See United States v. United Mine Workers, 330 U.S. 258, 304-06, 67 S.Ct. 677, 701-02, 91 L.Ed. 884 (1947); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 442-43, 31 S.Ct. 492, 498-99, 55 L.Ed. 797 (1911).[6] The only adverse consequence of the adjudication which the mother had to endure was the requirement that she surrender the passport and seek the court's permission before taking L.T. abroad. Although coercive sanctions such as those in Gompers and United Mine Workers could not have been visited upon her without a prior finding of contempt, we perceive no reason why the required deposit of the passport with the Clerk could not have been secured through a motion for supplemental relief requesting modification of the court’s earlier order. The sanctions were not sufficiently drastic to make a finding of civil contempt a prerequisite for their imposition. This being true, the determination whether or not the mother was properly held in civil contempt makes no real difference to any issue in the case, for the relief awarded could be sustained even if that holding were erroneous.
We note, however, that even though the modest sanction imposed could have been granted without a finding of civil contempt, this is not in fact what occurred. Indeed, the surrender of the passport and related relief were ordered as the specified sanction only after the parties had been invited to address the appropriate remedy following a previous adjudication of contempt. Under these circumstances, it would be artificial and inappropriate for us to separate the finding of civil contempt from the remedy, and to find the second appealable but not the first. Accordingly, we conclude that we have jurisdiction to consider both whether the mother was correctly held in civil contempt and whether the sanction imposed was permissible.
IV
The mother initially based her appeal on the grounds that
(1) the court order was no longer in effect when she was adjudicated in civil, contempt of it;
(2) the order was insufficiently specific to create a predicate for civil contempt;
(3) the mother acted in good faith on the advice of counsel;
(4) the procedures in the trial court were inadequate to support a finding of civil contempt.
We are not persuaded by any of these contentions.
We begin with some basic principles. Civil as distinguished from criminal contempt is a sanction designed to enforce compliance with an order of the court and to compensate the aggrieved party for any loss or damage sustained as a result of the contemnor’s noncompliance. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); Zapata v. Zapata, 499 A.2d 905, 908 (D.C.1985). To establish civil contempt, the complainant must prove that the alleged contemnor was subject to the terms of a court order, and that he or she violated it. Woods v. Peckich, 463 Pa. 274, 280, 344 A.2d 828, 832 (1975). Because it is a “drastic remedy,” civil contempt must be proved by clear and convincing evidence. N.L. *44 R.B. v. Blevins Popcorn Co., 212 U.S.App. D.C. 289, 299-300, 659 F.2d 1173, 1183-84 (1981).
Unlike criminal contempt, which is designed to punish the contemnor and to vindicate the authority of the , court, McCann v. New York Stock Exchange, 80 F.2d 211 (2d Cir.1935), cert. denied, 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936) (Learned Hand, J.), civil contempt is not a crime. On the contrary, a civil contempt proceeding is a part of the original cause. Gompers, supra, 221 U.S. at 444-45, 31 S.Ct. at 499; Duell v. Duell, 85 U.S.App.D.C. 78, 178 F.2d 683 (1949). If the con-temnor in such a proceeding has violated the mandate of the court, then his or her intent is immaterial, and a showing of good faith is of no avail. McComb, supra, 336 U.S. at 191, 69 S.Ct. at 499. Indeed, we know of only two recognized defenses in civil contempt proceedings: substantial compliance and inability to do that which the court commanded. Maggio v. Zeitz, 333 U.S. 56, 76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948); Smith v. Smith, 427 A.2d 928, 932 (D.C.1980).
Courts have a right to demand, and do insist upon, full and unstinting compliance with their commands. One who is subject to a court order has the obligation to obey it honestly and fairly, and to take all necessary steps to render it effective. Village of Great Neck Estates v. Rose, 279 A.D. 671, 108 N.Y.S.2d 95, 97 (2d Dept. 1951), appeal dismissed, 303 N.Y. 904, 105 N.E.2d 491 (1951). He or she may not do the prohibited thing, nor permit it to be done by his or her connivance. Roehl v. Public Utility Dist. No. 1 of Chelan County, 43 Wash.2d 214, 231, 261 P.2d 92, 101 (1953) (en banc). Indeed, he or she must be diligent and energetic in carrying out the orders of the court, Swift v. Blum, 502 F.Supp. 1140, 1143 (S.D.N.Y.1980), and a token effort to comply will not do. Sound Storm Enterprises, Inc. v. Keefe, 209 N.W.2d 560, 568 (Iowa 1973).
If a party subject to a court order claims not to understand its requirements, he or she may apply to the court for construction or modification, McComb, supra, 336 U.S. at 192, 69 S.Ct. at 500; Regal Knitwear Co. v. Labor Board, 324 U.S. 9, 15, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945) or, on the facts here, for leave to take the passport out of escrow. To fail to take such steps is to act at one’s peril as to what the court’s ultimate interpretation of the order will be. Woolfolk v. Brown, 358 F.Supp. 524, 534 (E.D.Va.1973), related order aff'd in part and rev’d in part on other grounds, 538 F.2d 598 (4th Cir.1976).
As we have noted at pp. 43-44, supra, the sanctions for civil contempt are often drastic. A contemnor may be conditionally imprisoned until compliance. Gompers, supra, 221 U.S. at 442, 31 S.Ct. at 498. He or she may also be subject to a staggering daily fine. United States v. City of Yonkers, N. Y., 856 F.2d 444, (2d Cir.1988), stayed in part - U.S. -, 109 S.Ct. 14, 101 L.Ed.2d 964 (1988) (City conditionally fined up to $1,000,000 per day); United States v. United Mine Workers, supra; United States v. Barnett, 346 F.2d 99, 108 n. 1 (5th Cir.1965) (Wisdom, J., dissenting, quoting from earlier unreported order imposing conditional fine of $10,000 per day on individual contemnors until compliance). The “American rule” notwithstanding, the contemnor is ordinarily required to pay the aggrieved party’s counsel fees, even in the absence of a finding of willfulness. Perry v. O’Donnell, 759 F.2d 702, 705 (9th Cir.1985); Motley v. Yeldell, 664 F.Supp. 557, 558 (D.D.C.1987).
The decision whether to hold a party in civil contempt is confided to the sound discretion of the trial judge, and will be reversed on appeal only upon a clear showing of abuse of discretion. In re Ollie Bryant, 542 A.2d 1216 (D.C.1988). In the present case, Judge Bacon, eschewing broader remedies, did the minimum necessary to ensure compliance with the court’s orders, and no .more. The sanction — requiring the passport to be deposited with the Clerk of the Court and associated steps preventing L.T.’s removal from the United States — enforced compliance with Judge Dixon’s order and protected the father from future violations. No conditional im *45 prisonment or daily fine was imposed pending compliance. No counsel fee was awarded. Assuming that the document signed by Judge Dixon was a court order which bound the mother — a point conceded by the mother before the trial court — the sanction imposed was temperate.
Having in mind these general observations, which in some measure affect the mother’s entire submission, we now address each of her arguments in turn.
A. The mother claims that “as of December 16, 1986, when the contempt sanction was imposed,[7] the November 14, 1985 order had been superseded.” Her theory is that Judge Dixon’s order had constituted pendente lite relief only, and that it was automatically extinguished by Judge Bacon’s entry on October 27, 1986 of a final order resolving the issues of divorce, custody, support and visitation. There being no pendente lite order, says the mother, there can be no civil contempt to compel compliance with its terms.
We agree with the father, however, that the requirements of paragraph 10 that the passport be deposited with the court, that the Clerk not release the passport without further order of the court, that the mother not seek another passport for L.T., and that L.T. not be taken outside the United States without prior court approval were clearly designed to prevent the mother from again violating the November 14, 1985 order. The ruling of October 27, 1986 made no allusion whatever to the disposition of the passport. Accordingly, paragraph 10 was not superseded by the divorce decree, as contended by the mother, except to the extent that it was strengthened by the civil contempt sanctions. The fact that these sanctions were imposed by the same judge that issued the divorce decree, and that the contempt motion was discussed and decided at the same trial that resulted in that decree, demonstrates that the divorce decree was not intended to “supersede” paragraph 10 of the November 14, 1985 order. In addition, Judge Bacon’s April 10, 1987 Memorandum of Decision denying appellant’s Motion for Reconsideration states that the sanctions were imposed to ensure the implementation of certain provisions of the divorce decree. Judge Bacon ordered further visitation in her final decree, so that the need to protect the father from similar violations obviously survived the formality of changing a pen-dente lite relief into a permanent remedy.[8]
The mother also argues that the sanctions should not have been imposed because, upon the conclusion of her trip abroad with L.T., she returned the passport to her attorney and was therefore “in complete compliance with the November 14, 1985 order at the time the contempt finding was made.” But having once violated the November 14, 1985 order, the mother would have been free to do the same again, but for the modest sanctions imposed by the court to prevent her from doing so. The purposes of paragraph 10 could hardly have been vindicated if the mother, after having violated the order by impermissibly taking L.T. abroad, could avoid sanctions simply by returning his passport to her attorney until the next time she wished to use it. To treat an act of disobedience as having become insulated from contempt sanctions because it has been completed would have the effect of countenancing seriatim violations. We cannot accept the proposition that a judge’s authority to en *46 sure compliance with a court order is so ephemeral.
B. The mother next complains that “the November 14, 1985 Order was not clear and specific enough to create a predicate for contempt.” Without identifying any purported ambiguity, she says that the order “did not give clear notice of the conduct prohibited.” We perceive no such infirmity.
We note at the outset that the November 14, 1985 order — entitled a stipulation — was drafted by the parties and signed by the court. The record does not disclose which party was more active in its preparation, but the order awarded temporary custody of L.T. to the mother and required the father to make support payments, which facts suggest that the mother’s counsel may have had something to do with it. In any event, the mother indicated her consent by signing the document personally, as did her counsel. For the mother to complain after the fact that she and her counsel did not understand that to which they had agreed is problematic to say the least.
The mother argues, in support of her contention that the November 14, 1985 order was vague, that she and her counsel believed that the stipulated order of March 28, 1986, which provided that the father’s visitation would be as recommended by Dr. Straight, constituted either the consent of the parties or a superseding court order within the meaning of paragraph 10 of Judge Dixon’s order. This argument seems to us to have little to do with any purported vagueness of the original order, but is really a claim that the mother did not violate that order at all.
The March 28 order, however, did not address the specific issue of the passport, and the alternative requirements of consent by the father or leave of court remained. As events transpired, the father was not asked to consent to the delivery of the passport to the mother, nor did he do so. No leave of court was obtained.
Moreover, Dr. Straight’s recommendation against visitation did not bar contacts between father and son in perpetuity. Indeed, Judge Bacon declined in December 1986 to endorse Dr. Straight’s view and authorized supervised visitation. To protect the father’s interest, it remained appropriate to maintain the kind of supervision contemplated by paragraph 10 to assure L.T.’s availability in the event of court-ordered resumption of visitation. Recognizing the intense emotions generated by this kind of litigation, and by the controversy over who abused L.T., the judge might well have placed some condition on the release of the passport (e.g., the posting of a bond) if an appropriate motion had been filed. By declining to seek leave of court, the mother and her counsel prevented the father from being heard on the issue, and the court from exercising its discretion as to how to handle a sensitive problem and protect the interests of all concerned.
We emphasize that in this kind of case, the law does not countenance self-help. If the mother and her counsel thought that Judge Dixon’s order was no longer in effect, they could have requested the father’s consent. In the event that consent was withheld, they might have sought leave of court. “If [parties] enter upon transactions which raise doubts as to the applicability of a [court order], they may petition the court granting it for a modification or construction of the order.” Regal Knitwear Co. v. Labor Board, supra, 324 U.S. at 15, 65 S.Ct. at 481. The order in the present case effectively invited the mother to seek a “further order of court” in an eventuality such as the one which arose. Having eschewed these alternatives, there can be no complaint that the burden of any uncertainty is on the mother’s shoulders. McComb, supra, 336 U.S. at 193, 69 S.Ct. at 500. When a party, as in this case, claims to be in doubt about what the court intends her duties to be under a judicial decree, and nevertheless proceeds under her own construction, she does so at her peril. State ex rel. Jarboe v. Holt, 444 S.W.2d 857, 859 (Mo.1969) (en banc). The mother had no more right than any other litigant
to decide that a [court] order running against [her] had been rendered nugatory by a subsequent [decree].
*47 Yanish v. Barber, 211 F.2d 467, 470 (9th Cir.1954).[9]
C. The mother claims that she acted in good faith and on the advice of her counsel. The short answer is that, in a civil contempt proceeding, this is no defense. Securities and Exchange Commission v. First Financial Group of Texas, 659 F.2d 660, 670 (5th Cir.1981); In re Door, 90 U.S.App.D.C. 190, 194 n. 6, 195 F.2d 766, 770 n. 6 (1952); In re Eskay, 122 F.2d 819, 822 n. 17 (3rd Cir.1941); Weaver v. State, 244 Md. 640, 644, 224 A.2d 684, 687 (1966). The reason for this rule is, of course, that civil contempt is remedial and designed to ensure the enjoyment by the aggrieved party of that to which that party is entitled. To paraphrase what the Supreme Court has stated in another context, it is of no consolation to an individual denied rights secured by a court order that it was done in good faith or upon the advice of counsel. Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961).
Advice of counsel may be relevant in mitigation, in order to temper the sanctions which might otherwise be imposed. First Financial Group of Texas, supra, 659 F.2d at 670. The sanctions in this case, however, were sufficiently modest, and their alleviation is not called for.
D. The mother’s next contention is that, in holding her in civil contempt, Judge Bacon failed to follow procedures which the mother believes to be appropriate in civil contempt cases. We do not agree.
The mother cites Morgan v. Barry, 596 F.Supp. 897, 899 (D.D.C.1984). In that case, Chief Judge Aubrey Robinson explained that
There are three steps to civil contempt proceedings. First, the Court must issue an order_ Secondly, following disobedience of that order, there is the issuance of a conditional order finding contempt and threatening to impose a specified penalty unless the recalcitrant party complies with purgation conditions. Finally, should the party fail to purge itself of contempt, exaction of the threatened penalty is the final stage.
We have no quarrel with Judge Robinson’s description of the appropriate procedures in a case in which conventional coercive sanctions, such as conditional imprisonment or a daily fine, have been imposed. If, for example, Judge Bacon had ordered that the mother be imprisoned until such time as she surrendered the passport and promised not to transgress again, it would have been appropriate to stay the sanction until the mother had an opportunity to comply. Since Judge Bacon selected a far less draconian remedy, and thus held nothing punitive over the mother’s head, we see no purpose whatever to be served by the three-step procedure suggested.[10]
The mother had notice of the motion asking that she be held in contempt. After she was found in civil contempt, she had the opportunity to address the issue of sanctions. When sanctions were imposed, they were entirely remedial in character. Accordingly, we hold that her procedural rights were scrupulously observed.
V
We now address the two arguments first made by the mother in her supplemental brief (after a member of the court had raised them sua sponte) that there was no contempt of the November 1985 stipulation because it was not a court order, and that even if it was a court order it was not addressed to or enforceable against her. Before assessing the merits of these contentions, we examine the scope of our authority to consider them for the first time at so late a stage in the case.
*48 A. In Miller v. Avirom, 127 U.S.App.D.C. 367, 384 F.2d 319 (1967), the court outlined the basic principles applicable to a situation of this kind:
In our jurisprudential system, trial and appellate processes are synchronized in contemplation that review will normally be confined to matters appropriately submitted for determination in the court of first resort. Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party’s thesis, will normally be spurned on appeal. Canons of this tenor reflect, not obeisance to ritual, but considerations of fairness to the court and the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact.
127 U.S.App.D.C. at 369-70, 384 F.2d at 321-22. Acknowledging that there are occasions when the rigor of the basic rule should be tempered, the court defined them narrowly as arising only in “exceptional situations” where “a clear miscarriage of justice” would otherwise result. 127 U.S.App.D.C. at 370-71, 384 F.2d at 322-23. Accord, Bullock v. Young, 118 A.2d 917, 919 (D.C.1955). As this court put it more recently, “parties may not assert one theory at trial and another theory on appeal.” Haches v. Haches, 446 A.2d 396, 398 (D.C.1982).
We should not be unduly unbending in adhering to the foregoing standard. As the Supreme Court explained in Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941),
Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.
Nevertheless, given the general rule and the limited character of the exceptions, the mother’s burden would have been a heavy one even if she had presented the arguments on which she now relies at the outset of the appeal.
The mother’s position here is even more awkward than in the typical case in which contentions are raised for the first time on appeal. Unlike many litigants, she did not even make her new contentions on appeal until after she had filed her original brief and her reply brief, and then only when she was prompted to do so from the bench. We are not powerless even under these extreme circumstances to hear her plea, but a compelling demonstration of unfairness is surely required. No such showing has been made.
B. Paragraph 10 was part of a document which was entitled a stipulation. Although that document bears the signature of Judge Dixon, it contains no express words of command. The critical words “SO ORDERED,” which do appear on the consent order respecting visitation signed on January 30, 1986, are nowhere to be found in the paper signed by Judge Dixon. Much of the November document reads like an agreement, and it contains a reference to the parties’ preference for resolving the delicate issues, where possible, without judicial intervention.
A settlement which has been reduced to a consent judgment is an order of the court, and subject to enforcement like any other court order. Moore v. Jones, 542 A.2d 1253, 1254 (D.C.1988). In general, however, a settlement agreement which has been approved and signed by the court, but which has not been framed as an order or a judgment, remains an agreement only, and may be enforced by an action for breach of contract but not by contempt. Mr. Steak, Inc. v. Sandquist Steaks, Inc., 309 Minn. 408, 245 N.W.2d 837 (1976); Fry v. Schwarting, 4 Va.App. 173, 178-179, 355 S.E.2d 342, 345 (1987); Gingold v. Gingold, 48 A.D.2d 623, 623, 367 N.Y.S.2d 791, 792 (1st Dept.1975). These authorities hold that a judge’s signature alone is not sufficient to constitute the type of mandate *49 which will implicate the contempt power in the event of a violation. Indeed, a judge may not convert a settlement agreement into a court order, enforceable by contempt, by adding the words “SO ORDERED” to it. Gardiner v. A.H. Robins Company, 747 F.2d 1180, 1190 n. 13 (8th Cir.1984). As the Court of Appeals observed in Gardiner, that court’s elimination on appeal of the words “SO ORDERED,” which had been improperly added to a settlement agreement by the trial court,
assures Robins not that the agreement cannot be enforced, because it can, but that the court cannot use its contempt powers to enforce a court order which merely acknowledges and approves a settlement, without specifically commanding or enjoining any particular conduct.
747 F.2d at 1190; see generally, Annotation, Contempt for Violation of Compromise and Settlement the Terms of Which Were Approved by Court but not Incorporated in Court Order, Decree, or Judgment, 87 A.L.R.3d 1047 (1978).
Given these authorities, the mother may have had an arguable defense to contempt proceedings if she had raised it in timely fashion. She did not do so, however, and that fact in itself constitutes persuasive evidence that the parties intended to, and did, consent to the entry of an order enforceable by contempt, rather than to the court’s approval of a mere agreement.
There is significant evidence to support that interpretation in any event. The contemporaneous jacket entry of November 14,1985 describes what Judge Dixon did as “Stipulation Order signed.” Paragraph 10 requires the mother’s counsel to hold L.T.’s passport in escrow “until further order of court_” [11] In her Order of December 18, 1986, Judge Bacon referred to the document as a “stipulation/order.” In her later order of April 10,1987, she described it both as a “stipulation/order” and as a “court order.” At no time did the mother or her counsel contest these characterizations. Indeed, the mother repeated them on numerous occasions in her brief in this court, and even in her reply brief.[12] The parties’ contemporaneous treatment of the document signed by Judge Dixon as a court order surely illuminates their intention at the time.
If the mother had raised the point in timely fashion in the trial court, the father could have adduced any relevant evidence as to the intent of the parties and the nature of the document. If we were to hold, at this stage of the case, that contrary to the assumption of all concerned there was no court order, this would be manifestly unjust to the father, who never had the occasion or opportunity to contest a question which had not been raised at all. A second alternative — to remand now for development in the trial court of a previously conceded issue — would severely prejudice the father as a result of an allegedly improvident concession by the mother. We therefore conclude that the mother has failed to show the existence of exceptional circumstances warranting either of these drastic steps, and that the balance of the equities is against her.[13]
C. Paragraph 10 of what we have now held to be the order of November 14, 1985 provides that counsel for plaintiff will hold L.T.’s passport in escrow. The mother contends that this paragraph did not require her to do anything, and that she therefore could not have violated it.
As we have previously noted, the mother placed her signature on Judge Dixon’s order. She cannot and does not claim that she was not aware of it. The order as a *50 whole was, like any such document, directed to the parties. There can be no doubt that the purpose of any order is to require the parties to conform their conduct to it.
The escrow arrangement was obviously designed to prevent L.T. from being taken abroad without the consent of the father or leave of court. By taking the passport from her counsel, and L.T. out of the country, the mother frustrated the underlying purpose of paragraph 10. The attorney could not keep the passport in escrow if it was with mother and son in a foreign land. If the violation is viewed as having been committed by counsel, the mother surely aided and abetted.
Assuming, arguendo, that the mother did not violate the letter of Judge Dixon’s order — and we are not at all sure that this assumption holds — that is not a defense in civil contempt proceedings. As Judge Swan stated for the court in John B. Stetson Co. v. Stephen L. Stetson Co., 128 F.2d 981, 983 (2d Cir.1942)
In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded.
Accord, McComb v. Jacksonville Paper Co., supra, 336 U.S. at 192-93, 69 S.Ct. at 500. If the letter of the order required her attorney to keep the passport in escrow, the mother obviously violated at least its spirit by taking the passport away.
Moreover, the fact that her attorney is the person to whom paragraph 10 is directed does not preclude the mother from being held in civil contempt of it. Even a stranger to litigation can be held in contempt for violation of a court order if he or she has notice of it and acts in concert or privity with the party against whom the order is directed. See Hendershot v. Handlan, 162 W.Va. 175, 248 S.E.2d 273 (W.Va.App.1978); Annotation, Violation of State Court Order by One Other than Party as Contempt, 7 A.L.R.4th 893 (1981 and 1987 Supp.). The mother is not a stranger to this litigation or, in any meaningful sense, to paragraph 10. Accordingly, her belated argument that she could not be held in civil contempt of paragraph 10, because it was not directed at her but at her counsel, fails a fortiori.
VI
For the reasons which we have articulated above, we find no error by the trial court. Although this would normally end our inquiry, a few more words are in order.
In the public mind, the term contempt of court connotes deliberate definance of judicial authority. It bristles with moral turpitude. This is not a case of such iniquity. As we have explained earlier in this opinion, neither good faith nor advice of counsel would serve the mother as a defense. One can be in civil contempt because one’s attorney misunderstood a court order, even where that misunderstanding was a reasonable one. In the present case, the father had no current visitation rights when the mother took the passport. Any legal advice upon which she may have concluded that she had the right to do what she did, albeit erroneous, was not altogether implausible.
Civil contempt is not a crime. It does not require mens rea or, in lay terms, a bad intent. In affirming the judgment below, we draw no conclusions, favorable or unfavorable, about the mother’s intent. We also think it important that the mother’s surrender of the passport purged her of civil contempt, and she is not in contempt as of this writing.
Situations change as cases await resolution. The mother advises us that three psychiatrists have unanimously concluded, since the events in question, that the father should not be permitted to visit L.T. any longer. She claims that the requirement that the passport be retained by the Clerk no longer serves any useful purpose, and asks us to vacate it. The trial court, of course, retains the authority to modify its prior orders to conform to any relevant change in circumstances, and it is that court to which any such request should be addressed.
*51 The contempt citation and this entire appeal could, in our view, have been avoided but for an unfortunate decision to try a short-cut around the procedures contemplated by paragraph 10. Even on appeal, the case could almost certainly have been compromised on terms which would have accommodated the reasonable concerns and interests of father, mother and child. Since it was not, we must decide issues which might and probably should have been more satisfactorily resolved in another way. As there was no such resolution, the judgment of the trial court must be and it is hereby
AEPIRMED.

. For reasons stated below, we conclude that the document in question was a mandate of the court, and that failure to comply with its terms was reachable by civil contempt proceedings.

. The word "Approved," at the left margin, is also on the same line as Judge Dixon's signature. It is therefore uncertain whether the word refers to the judge’s signature (which might suggest that the judge was merely approving a stipulation) or to approval by the parties (which might suggest that the parties were indicating their consent to the judge’s directive).

. The father tested negative for gonorrhea.

. The initial contempt order did not specify whether the mother was being held in civil or criminal contempt. Judge Bacon also found the mother’s violation to be “willful," a term which suggests criminal rather than civil contempt. In her later order dated April 10, 1987, however, Judge Bacon made explicit the obvious, namely that since the proceedings were remedial and designed to coerce compliance, the mother had been held in civil contempt.

. Our characterization of the motion as untimely may seem unfair, for the record contains affidavits by two of the mother’s attorneys stating that counsel did not receive the order within the ten-day period. Cf. Schmittinger v. Schmittinger, 538 A.2d 1158 (D.C.1988). The trial judge evidently never ruled on the issue as to whether the mother had timely notice of the order. If the motion for reconsideration was timely because the order of December 16, 1986 had never been sent to counsel, that motion would have stopped the running of the period during which an appeal might be taken. This would have rendered the filing of the notice of appeal premature, and the appeal would have had to be dismissed without prejudice. Carter v. Cathedral Ave. Co-op, Inc., 532 A.2d 681, 683 (D.C.1987); cf. Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349 (1952) (explicating limitations on trial court’s authority to amend an order after a notice of appeal from that order has been filed).
The two appeals have been consolidated, and there is no difference in substance between the first order holding the mother in civil contempt and the second order reaffirming that adjudication. It is therefore of no consequence whether we frame our mandate with respect to the superfluous appeal as an affirmance because the trial judge lacked jurisdiction to grant the motion or a dismissal of the appeal for lack of appellate jurisdiction. Under either alternative, we reach the merits with respect to the remaining appeal.

. In the oft-quoted words of the Supreme Court in Gompers, the contemnor, if imprisoned, "carries the keys of his prison in his own pocket,” and can secure his liberty at any moment "by doing what he had previously refused to do." 221 U.S. at 442, 31 S.Ct. at 498.

. As we have noted, the mother was orally adjudicated in contempt in October 1986.

. In general, upon the entry of a final judgment, a decree pendente lite, which is by its very nature interlocutory, comes to an end and is superseded by the final order. Ameron, Inc. v. U.S. Army Corps of Engineers, 610 F.Supp. 750, 757 (D.N.J.1985), aff’d as modified, 787 F.2d 875 (3rd Cir.1986), cert. granted, - U.S. -, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988); Lowell Bar Ass'n v. Loeb, 315 Mass. 176, 188, 52 N.E.2d 27, 35 (1943). In the present case, however, the alleged violation took place while the pendente lite decree remained in effect, and the mother was adjudicated in civil contempt at the same time that the underlying purpose of the provision which she had transgressed — protection of the father’s visitation rights — was reaffirmed in the final judgment. As a matter of simple logic, Judge Bacon’s extension of a proscription into the final judgment cannot be deemed to preclude her from imposing sanctions for violation of that very proscription while it was in existence as part of a pendente lite order.

. In Yanish, the court order was an injunction and the allegedly superseding event a statutory enactment, but neither of these distinctions is significant.

. According to the trial court and the father, Morgan v. Barry does not control this case because it is a decision by a federal trial judge. Although this is true, we elect not to resolve the issue upon that ground, lest it be thought that we disapprove of that decision, which we do not.

. If the document itself were not a court order, the words "further order” would be out of context and meaningless.

. The first sentence of the reply brief alludes to the mother's alleged violation of a provision in a "stipulated pendente lite order.”

. The mother cites Ratchford v. Ratchford, 295 S.C. 297, 368 S.E.2d 214 (Ct.App.1988) (per cu-riam) for the proposition that we are required to vacate the civil contempt order sua sponte in the present circumstances. We find nothing in that rather cryptic opinion to support this contention, nor is it clear that the appellate court in that case addressed the kinds of issues with which we are dealing here.